In the Matter of Compelling Payment of Tax upon Property Given by the Will of HANNAH ENSTON, Deceased.

Property within this state, which passed by will or intestacy from a non-resident decedent to collateral relatives or strangers, was not taxable under the "Collateral Inheritance Act" (Chap. 483, Laws of 1885), prior to its amendment in 1887 (Chap. 713, Laws of 1887). That act only applied to property so passing "from any person who may die seized or possessed of the same while being a resident of the state" and to property within the state owned by a resident and transferred, *inter vivos*, to take effect at the death of the transferrer. (DANFORTH and FINCH, JJ., dissenting.)

(Argued January 28, 1889; decided April 16, 1889.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made July 1, 1887, which affirmed an order of the surrogate of the county of Kings imposing a tax under the act (Chap. 483, Laws of 1885.)

The material facts are stated in the prevailing opinion.

*Josiah T. Marean* for appellants. The legislature intended to exempt from the collateral inheritance tax estates of non-residents, whether real or personal, passing by will or intestate laws. (1 R. S. 389, § 5; Laws of 1851, chap. 176, § 2; 1 R. S. 419, § 3; *Williams* v. *Bd. of Suprs.*, 78 N. Y. 561, 565, 566.) The collateral inheritance tax law imposes a tax upon the right to succeed by virtue of our laws. (*Scholey* v. *Rew*, 23 Wall. 331; *Eyre* v. *Jacobs*, 14 Gratt. 422; *Pullen* v. *Wake*, 66 N. C. 361; *Moultrie* v. *Hunt*, 23 N. Y. 394; *Parsons* v. *Lyman*, 20 id. 103; Code, § 2694; 55 Geo. 3, chap. 184, pp. 564, 565; 16 and 17 Vic. chap. 51, p. 440; 13 U. S. Stat. at Large, 285, 287; *Orcutts' Appeal*, 97 Penn. St. 185, 186; *Thompson* v. *Advocate General*, 12 C. & F. 1; *Wallace* v. *Atty.-Genl.*, 1 L. R. Ch. 1; *U. S.* v. *Hunnewell*, 13 Fed. Rep. 617; *Atty.-Genl.* v. *Napier*, 6 Exch. 217.) It is for the legislature to determine what classes of objects shall be submitted to the unequal burden, but in the construction of their acts the presumption is always in favor of the narrower rather than the wider limit of that inequality. (Cooley on Taxation [2d ed.] 267, 275; *Warrington* v. *Furbor*,

8 East, 245; *Denn* v. *Diamond,* 4 B. & C. 244; *Tompkins* v. *Ashby,* 6 id. 543; *Doe* v. *Snaith,* 8 Bing. 152; *Wroughton* v. *Turtle,* 11 Mees. & W. 567; *Marquis* v. *Commissioners,* 6 Exch. 479; *Gurr* v. *Scudds,* 11 id. 192; *Green* v. *Holloway,* 101 Mass. 248; *Smith* v. *Waters,* 25 Ind. 399; *Cahoon* v. *Coe,* 57 N. H. 557; *U. S.* v. *Wiggleworth,* 2 Story, 373; *Powers* v. *Barney,* 5 Blatch. 203; *U. S.* v. *Watts,* 1 Bond. 583; *People* v. *Davenport,* 91 N. Y. 591; *In re Miller,* 110 id. 222.) Personal property, consisting of evidence of debt and of shares in foreign corporations, as in this case, ought not to be held to be property within this state within the meaning of this act. (*Orcutts' Appeal,* 97 Penn. St. 185, 186; *People* v. *Smith,* 88 N. Y. 580; *Peterson* v. *Chemical Bk.,* 32 id. 21.)

*John F. Clake* for respondent. It has been the uniform policy of legislation to make all exemptions from taxation clear and explicit. They are to be clearly expressed, and never presumed or implied. (Burr. on Taxn. 132; Cooley on Taxn. 146; Hilliard on Taxn. 72, 74; Law of Assess. [D. W. Welty] 305; *Mayor, etc.,* v. *C. R. & B. C.,* 50 Ga. 620; 2 R. S. 981, 982, Laws of 1882, chap. 46; Laws of 1883, chaps. 397, 406; Laws of 1852, chap. 282; Laws of 1884, chap. 537; Laws of 1847, chap. 133; Laws of 1851, chap. 122; Laws of 1867, chap. 516; Laws of 1865, chap. 546; Laws of 1856, chap. 183; Laws of 1866, chap. 273; Laws of 1879; chap. 210–250.) The words " who may die seized or possessed of the same while being a resident of the state " in the collateral inheritance act, instead of implying an action, are expressive and declaratory of an additional case in which the tax is to be imposed. (*Hoyt* v. *Comrs. of Taxes,* 23 N. Y. 224.) The tax sought to be recovered in this matter is upon property within this state passing, by will and, therefore, is within the terms of the act, chapter 483, Laws of 1885. (*Thompson* v. *Adv.-Genl.,* 12 C. & F. 1; *Wallace* v. *Attorney,* L. R., 1 Ch. Div. 1; *U. S.* v. *Hunnewell,* 13 Fed. Rep. 617.)

ANDREWS, J. Hannah Enston died at Spartensburgh, South Carolina, on the 26th day of October 1886. At the time of

her death she was a resident of Philadelphia in the state of Pennsylvania, and she had never been a resident of or domiciled in this state. She left a last will and testament which was admitted to probate in the Surrogate's Court of Kings county. She had an estate amounting to about one million dollars, which by her will she disposed of to her collateral relatives and to strangers in blood. One of her executors resided in the county of Kings and the other at Philadelphia; and all the legatees but one were non-residents of this state. Nearly all her property was invested by her agents, residing in the city of Brooklyn, and was managed by them. After making certain deductions there was left, as held by the surrogate, for the purposes of taxation under the act, chapter 483 of the Laws of 1885, $843,541.11, consisting of the following property: Real estate situate in the county of Kings, $125,575; bonds secured by mortgages upon real estate in the state of New York, $471,650, and promissory notes and bonds of municipal corporations, and stocks and bonds of other and foreign corporations, $246,316.11. Upon this property the surrogate made an order directing the executors to pay a tax of $42,107.05. From the order of the surrogate the executors appealed to the General Term where the order was affirmed, and they then appealed to this court.

It is not questioned that this tax would have been proper under the act referred to, if Mrs. Enston had, at the time of her death, been a resident of this state. But her executors claim that as she was not a resident of this state, there is no law imposing or requiring payment of this tax.

For the purpose of determining whether this tax was properly exacted, we must construe section 1 of the act of 1885, as that section is the only one which describes the property to be taxed under the act, and it is as follows: "Section 1. After the passage of this act, all property which shall pass by will or by the intestate laws of the state, from any person who may die seized or possessed of the same while being a resident of the state, or which property shall be within this state, or any part of such property, or any interest

therein, or income therefrom, transferred by deed, grant, sale
or gift made or intended to take effect in possession or enjoy-
ment after the death of the grantor or bargainor to any per-
son or persons, or to any body politic or corporate, in trust or
otherwise, or by reason whereof any person, or body politic
or corporate shall become beneficially entitled, in possession or
expectancy, to any property or the income thereof other than
to or for the use of father, mother, husband, wife, children,
brother and sister and lineal descendants, born in lawful wed-
lock, and the wife or widow of a son, and the husband of a
daughter, and the societies, corporations and institutions now
exempted by law from taxation, shall be, and is subject to a
tax of five dollars on every hundred dollars of the clear mar-
ket-value of such property, and at and after the same rate for
any less amount, to be paid to the treasurer of the proper
county, and in the city and county of New York to the
comptroller thereof, for the use of the state, and all admin-
istrators, executors and trustees shall be liable for any and
all such taxes until the same shall have been paid as here-
inafter directed; provided that an estate which may be
valued at a less sum than five hundred dollars shall not be
subject to said duty or tax."

The section is singularly involved and obscure in its
phraseology, and the precise legislative intent is very far from
being clear.   But we must meet the difficulties which the
section presents as well as we can, and by a fair construc-
tion of the language used give effect to what we believe to
have been the purpose of the legislature.   The tax imposed
by this act is not a common burden upon all the property or
upon the People within the state.   It is not a general but a
special tax, reaching only to special cases and affecting only
a special class of persons.   The executors in this case do not,
therefore, in any proper sense, claim exemption from a general
tax or a common burden.   Their claim is that there is no law
which imposes such a tax upon the property in their hands as
executors.   If they were seeking to escape from general taxa-

tion, or to be exempted from a common burden imposed upon the People of the state generally, then the authorities cited by the learned counsel for the People, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law. The following authorities furnish the true rule applicable to such a case: Cooley on Taxation (2d ed. 275); *United States* v. *Wiggleworth* (2 Story, 373); *Powers* v. *Barney* (5 Blatch. 203); *United States* v. *Watts* (1 Bond, 583); *Doe* v. *Snaith* (8 Bing. 152); *Green* v. *Holloway* (101 Mass. 248).

The section imposes a tax very plainly upon two classes of property: (1.) Upon all property which "shall pass by will, or by the intestate laws of this state, from any person who may die seized or possessed of the same while being a resident of the state." (2.) Upon property which shall be within this state transferred, *inter vivos*, to take effect at the death of the grantor or bargainor. It is claimed on behalf of the People that the words, "or which property shall be within this state," were added to the prior language, which included only property left by residents of the state, so as to include all property, whether owned at death by a resident or non-resident. If that had been the result sought by the draftsman of the act, it would have been easy in simple language to have covered all the property within the state which might pass by will or intestacy from any person whatever. If the construction claimed by the People be the correct one, then we have the peculiar feature that as to the second class provided for in the act (of property transferred, *inter vivos*, to take effect at death), instead of beginning with "all property," as was previously done as to the first class, we find the singular language, "any

part of such property, or any interest therein, or income thereof, transferred," etc. Would any intelligent person have used such language to describe all property, or all the property of a certain class? We think the most obvious construction is, that the first class was intended to embrace all property passing by will or intestacy upon which it was intended to impose a tax, and that what immediately follows relates exclusively to property transferred within the state, *inter vivos*, and should be read consecutively as follows: " Which property shall be within this state, or any part of such property, or any interest therein, or income thereof, transferred by deed, grant, sale or gift," etc. The sentence could more properly have been constructed as follows: " Which property, or any part of such property, or any interest therein, or income therefrom, shall be within this state transferred by deed, grant, sale, gift," etc. The property meant by the words " which property " is not entirely certain. Its most natural meaning is the same property mentioned in the prior part of the section, and' that had reference only to property owned by a resident of the state. As such transfers of property *inter vivos* are very rare in the transactions of men, it is probable that the purpose of that provision was to defeat an evasion of the statute by persons whose property had been made liable to taxation by the previous portion of the section, to wit, residents of the state. It is not probable that the draftsman had in contemplation that a non-resident of the state would come here and make a transfer of property *inter vivos*, to take effect at his death. There would be no occasion for him to do it as the previous portion of the section had imposed no succession tax upon the property which he, as a non-resident, should leave; and yet the broad language used may be so construed as to include transfers *inter vivos* made by both residents and non-residents; and for the purposes of this case it does not matter which of those two constructions be given to that portion of the section. We are, therefore,' of opinion, in view of the inapt phraseology used, that there was no intention by that section to impose a succession tax upon

property passing by will or intestacy from a non-resident of the state to his collateral relatives.

The People claim some support for their construction of section 1 from section 11, which reads as follows: "Whenever any foreign executor or administrator shall assign or transfer any stocks or loans in this state, standing in the name of a decedent or in trust for a decedent which shall be liable to such tax, such tax shall be paid to the treasurer or comptroller of the proper county on the transfer thereof, otherwise the corporation permitting such transfer shall become liable to pay such tax." It must be observed that that section imposes no tax. Section 1 does that, and it is upon that section alone that reliance can be placed for the exaction of the tax. But it is proper to look at section 11, so far as it may throw light upon section 1. There may be cases where all the executors or administrators are non-residents of the state, and, therefore, not within the jurisdiction of our courts; and such executors or administrators may assign or transfer stocks or bonds in this state, and provision is here made for the collection of the tax in such cases. Section 15 is also referred to, and that is as follows: "The Surrogate's Court in the county in which the real property is situate of a decedent who was not a resident of this state, or in the county of which the decedent was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act." This section speaks of the real property of a non-resident decedent situate within this state. Hence the claim is made that the statute evidently contemplates that a tax may be imposed upon the real estate of a non-resident decedent. The section is very obscure. The draftsman evidently had in mind that there might be some case in which a non-resident decedent might leave real estate in this state which would be subject to taxation under the act. This section certainly can have no operation as it imposes no tax unless section 1 has imposed a tax in some case upon the real estate, within this state, of a non-resident decedent. An inference cannot be drawn from this section that section 1 authorizes the imposi-

tion of any tax upon the personal property of a non-resident decedent, because the section is expressly confined to the real property of such a decedent, and unless such a decedent leaves real property within this state, no jurisdiction is conferred upon a surrogate to determine the questions in relation to the tax arising under the provisions of the act. But there might be a case if section 1 be construed to impose a tax upon all property transferred within this state, *inter vivos*, where the real estate of a non-resident situate within this state would be liable to the tax; and in this way some force and effect could be given to section 15. There is certainly nothing in this act imposing a succession tax upon the stocks, bonds and other choses in action left within this state by a non-resident decedent. It is a general rule of law that such property attends the owner and has its *situs* at his domicile. It is true that that is a fiction of the law, but it is a fiction which must prevail unless there is something in the policy of the statute or its language which shows a different legislative intent. (*People ex rel. Hoyt* v. *Commissioners*, 23 N. Y. 224; *People ex rel.* v. *Smith*, 88 id. 576.)

The corporate stocks of the decedent were not, under the general laws of this state, taxable here, although the share certificates may have been held here by her agents. The certificates are in no general sense property. They simply represent interests in the corporations, and the *situs* of the property owned by a shareholder in a corporation is either where the corporation exists or at the domicile of the shareholder; it can in no proper sense be said to be where the certificates happen to be in the hands of an agent in a state where the corporation has no existence and the owner no domicile. So, too, the bonds of foreign corporations in the hands of the agents of the decedent here were not, in a legal sense, property within this state, and they were not, under the general laws or the policy of the state, taxable here. On the contrary, they were, by the general policy of the state, exempted from taxation here. (1 R. S. 389, § 5, as amended by chap. 176 of the Laws of 1851, § 2; Id. 419, § 3; *Williams* v. *Bd.*

*of Suprs.*, 78 N. Y. 561.) There is nothing in the act of 1885 from which it can be inferred that the legislature meant so far to depart from its general system and policy of taxation as to impose here a succession tax upon property thus situated. It was dealing with taxation upon the property of persons domiciled here, and used language sufficient to impose taxation upon such property, but not upon property of non-residents which had no *situs* in this state. It cannot be presumed that it was the intention of the legislature to impose taxation upon all the property of any decedent found within this state. Suppose a foreigner should come here with negotiable securities in his possession for the purpose of buying property here, and soon after should die here. Or suppose a merchant should come here from some other state with negotiable drafts or securities in his possession and should die here shortly after reaching this state; can it be supposed in either of such cases that it was the legislative intent that before the property of the decedent could be taken out of this state to the jurisdiction of his domicile it should be subjected to a tax to enhance the revenues of the state? Then, again, if this act is to be so construed as to reach personal estate of non-resident decedents, how is it to be administered? There are no means of ascertaining here how much of the estate will pass to collateral relatives under a will or by intestacy. That can only be known after the entire expenses of administration and the debts and liabilities of the deceased have been ascertained and deducted at the place of his domicile. Suppose a non-resident dies, leaving $1,000,000 in this state, and is largely indebted at the place of his domicile, what his net estate will be after deducting debts and expenses of administration can only be ascertained at his domicile, where his estate must be finally administered and adjusted, and there can be no way of adjusting the estate here, as there is no machinery in the law here appropriate to such a purpose; and thus it would be impractical to administer this statute. Still further, if a succession tax is demanded and paid here upon the property of a non-resident decedent, that does not

answer a claim for a further tax at the place of the decedent's domicile; and thus his estate might, and many times would be, subjected to a double succession tax. There is, in the state of Pennsylvania, a law for the taxation of collateral inheritances like that which exists here, and if this estate be subjected to this tax in this state, it may again be subjected to a like tax in that state. All these considerations should lead us to hesitate to put upon section 1 such a construction as would bring within its purview the property of a non-resident decedent left in this state at his death. Upon some of the questions here discussed, the case of *Orcutts' Appeal* (97 Penn. St. 179), is an instructive authority. By chapter 713 of the Laws of 1887, section 1 of the act of 1885 was so amended as to subject to its operation the property within this state of a non-resident decedent, and this amendment furnishes some evidence that prior thereto the proper construction of the section, according to the understanding of the legislature, did not include within its operation such property.

We are, therefore, of opinion that the judgment of the General Term and the decree of the surrogate should be reversed and the proceedings dismissed, with costs in all the courts to the appellants.

DANFORTH, J. (dissenting). The question we have to determine is, whether the act of 1885 (*supra*) discloses an intent that property within this state, but belonging at the time of her death to a non-resident, shall be taxed under its provisions. I am of the opinion that such is its manifest purpose. The language of the first section takes in all property within the state which may be the subject of transmission by will, or, in case of intestacy, by statute, or of alienation by deed, grant, sale or gift, made or intended to take effect in possession or enjoyment after the death of the grantor. The property subjected to taxation is the property within the state. The words used make it immaterial whether that property belonged to a resident or non-resident, so that its owner makes a testamentary

disposition of it, or a disposition of that nature in whatever form it may be. This construction is most in harmony with the subject of the statute and with the general policy of the state in reference to taxation. In the construction of such statutes exemption is not favored (*People ex rel. Manhattan Fire Ins. Co. v. Board of Commissioners,* 76 N. Y. 64; *People ex rel. West. Fire Ins. Co.* v. *Davenport,* 91 id. 575), and whatever grammatical difficulties may stand in the way the intent of the legislature, if let out by its language, should be made effective. It may be, as the appellant claims, that no satisfactory conclusion can be reached by following the exact punctuation and philology of the separate clauses of the statute, but the language is not incapable of a reasonable meaning, and it is enough if its general scope and tenor furnishes sufficient light for a sensible interpretation not at variance with the words in which the design of the legislature has been clothed. Such is the case before us. It is conceded by the learned counsel for the appellant that the confusion thought to be apparent in the words of this act is cured by the amendatory act of 1887 (chap. 713).

The corresponding provisions as contained in that statute are : " After the passage of this act all property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of *this* state or *if such decedent was not a resident of this state at the time of death,* which property or *any part thereof* shall be within the state." The amendatory words are those in italics. They supply by explicit designation what was implied in the former act and faciliate the interpretation of the other clauses, but they are, nevertheless, superfluous. They are neither wider than the former words nor do they make the statute more comprehensive than it was originally, nor require a different meaning to be given to it. Under either statute the clear intention was to bring in for taxation all property, real and personal, without regard to residence, which was within the jurisdiction of the courts of this state, and to be administered under its laws for the beneficiaries named in the

act, subject only to the exceptions named in the act itself, and no reason can be gathered from the first section for any other limitation.  Subsequent sections sustain the view I have presented.  Section 11 regulates the conduct of foreign executors or administrators in reference to certain property of the decedent, and section 15 provides for priority of jurisdiction in case "of a decedent who was not a resident of the state," as well as over the estate of a decedent who at the time of his death was a resident.

Nor do I conceive there is any reasonable doubt as to the property upon which the tax should be levied.  The appellant's contention is that, as to the personal securities, the residuum, after the payment of debts and other charges, should alone be assessed, and that the court of the decedent's domicile is the only one that can properly determine how much of them will go to the collateral beneficiaries.  The power of the legislature to tax the succession of non-residents to property in this state is unquestioned.  The property chargeable with the tax is defined with such clearness as to deprive the appellant's contention of all force.  In the first place it is all property which shall pass (§ 1).  (2d.) Its value in certain cases is to be appraised immediately after the death of the decedent, at what was the fair market-value thereof at the time of his death.  (3d.) All taxes imposed by the act are made due and payable at the death of the decedent (§ 4), and the executors are given power to sell, not, it will be observed, the property actually subject to the distribution to the beneficiaries, but "so much of the property of the decedent as will enable them to pay said tax" (§ 7); and by section 8 they are required "within thirty days to pay over the tax retained by them to the comptroller of the city or the treasurer of the proper county, as the case may be." Other sections provide for the appraisal of the property of persons whose estates are subject to the payment of the tax, others to secure its payment, and so framed as to prevent injustice to the persons interested in the property. But the primary object of the law is the imposition of the

tax and its prompt collection. To that end the executor is empowered to raise money by sale, and in case of stocks or bonds standing in the name of a decedent, or in trust for a decedent where a foreign executor assigns or tranfers them, the tax must be paid on the transfer, or if he fails to do so, the corporation itself must pay the tax. The last provision as to payment by a corporation could, of course, only be enforced against a domestic corporation or one doing business within this state.

There is no danger, therefore, that any such securities can be effectually assigned or transferred by the executor until the statute is complied with, or that the payment of the tax may be so evaded. The condition of his assignee would be no better than his own. If erroneously paid (§ 10), or if debts are proven against the estate of a decedent after the payment of legacies or distribution of property from which the tax has been deducted, or upon which it has been paid, a just proportion of the tax is to be repaid. But the taxes are first, and at all events, to be paid or secured, and this is to be done if necessary from the very property of which the decedent was in her lifetime seized. The authorities cited from other states would seem from their language to stand upon a different statute. They cannot in any case affect the construction of our own.

The order appealed from applies only to real property and personal securities which, at the time of the death of the decedent, were within this state. It conforms to the statute now before us, and should be affirmed.

EARL, PECKHAM and GRAY, JJ., concur with ANDREWS, J.; FINCH, J., concurs with DANFORTH, J.; RUGER, Ch. J., does not vote.

Order reversed.