(C. D. 564)

LEHN & FINK PRODUCTS CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 5, 1941)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney),
for the defendant.

(Before WALKER and TILSON, Judges)

TILSON, Judge: The plaintiff filed this suit seeking to recover a certain amount of money alleged to have been illegally exacted as customs duties on a certain importation of merchandise invoiced as "CRESOL 'D,' (CRESYLIC ACID)," and "CRESYLIC ACID." Duty was levied thereon by the collector at the rate of 40 per centum ad valorem and 7 cents per pound under paragraph 27 (2) and (5) of the act of 1930. The plaintiff claims the merchandise to be properly classifiable as cresylic acid, and dutiable at only 20 per centum ad valorem and 3½ cents per pound under paragraph 27 (b) of the same act:

The competing provisions of law here involved read as follows:

PAR. 27 (a) (2) all distillates (except those provided for in subparagraph (b)) of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being sub-' jected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate; * * *.

(5) * * * 40 per centum ad valorem and 7 cents per pound.

PAR. 27 (b) * * * cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate, and any mixture of any of the foregoing products with any of the products provided for in paragraph 1651, 20 per centum ad valorem and 3½ cents per pound.

The record consists of the testimony of eight witnesses, five testifying for the plaintiff and three for the defendant, two exhibits and numerous illustrative exhibits. All of the witnesses appear to have been well qualified.

The first witness testifying for the plaintiff stated that she had been employed by the plaintiff as an analytical chemist since 1929, and that during that time she had analyzed the raw materials, both imported and domestic, used by the plaintiff herein; that these raw materials included cresylic acid and that she had made about one analysis per week of cresylic acid during the past 10 years; that she had personally made an analysis of the merchandise here involved, using in each case a composite sample taken from five drums selected at random from each lot.

Photostatic copies of these analyses were identified by the witness and were admitted in evidence as plaintiff's exhibits 1 and 2. Typewritten copies of these analyses were also admitted in evidence as plaintiff's illustrative exhibits A and B.

The witness also testified that the analysis, exhibit 1, of the composite sample of the 52-drum lot showed the product to be cresylic acid, and upon being asked if she found that the material was cresylic acid which on being subjected to distillation yielded in the portion distilling below 215° C., a quantity of tar acids equal to or more than 75 per centum of the original distillate, she answered in the affirmative. The witness further testified that cresylic acid is cresol, and consists substantially of the three cresols, ortho, para and meta; that the term "cresol" is synonymous with and interchangeable with "cresylic acid"; that ortho, para, and meta are isomeric, and that isomeric compounds are chemicals that have the same molecular weight, but may differ in physical and chemical properties, and that the material analyzed by her was cresylic acid and consisted substantially of the

three cresols, ortho, para, and meta. She also testified that she followed the same procedure in the analysis of the material covered by exhibit 2, and obtained the same results.

On cross-examination this witness frankly admitted that she had nothing to do with the purchase and sale of coal-tar acids, such as cresylic acid and that her work with and knowledge of the same was confined entirely to the laboratory end.

Another witness testifying for the plaintiff stated that since 1923 he had been employed by the plaintiff herein as research chemist in developing new compounds and that he also checked analytical work of all kinds; that he had checked the analysis made by the previous witness and that he had formerly, from 1923 to 1930, made analyses of cresylic acid; that he had studied the subject of coal tars and from his experience had become familiar with cresylic acid. He gave the following as his definition of cresylic acid:

It is a fractional coal tar distillate which consists substantially of the isomers of cresol, and may have smaller quantities of other materials such as phenol, xylenols or higher boiling phenol, such as substantially the three isomers of cresol.

The witness also gave the following as his defintion of the term "isomers":

Isomers are compounds which have like structure as regard to its building bricks. I might say it has the same atoms, same group of atoms perhaps, but they are arranged differently, and the groups arranged differently makes them slightly different in their physical and sometimes in their chemical behavior.

The witness also testified that the three cresols, meta, para, and ortho were isomeric cresols and that he considered the terms "cresylic acid" and "cresols" synonymous and that in his experience the terms were used interchangeably; that exhibit 1 had been checked by him and initialed by him, and that the material shown by that analysis was cresylic acid. When asked whether the material shown in the analysis, exhibit 1, consists of cresylic acid, which on being subjected to distillation yields in the portion distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate, this witness, as did also the previous witness, answered in the affirmative.

This witness also frankly admitted on cross-examination that in giving his testimony he was speaking entirely from a scientific standpoint as a chemist.

The next witness testifying for the plaintiff stated that he was chief chemist for the plaintiff herein and had held such position since 1926 and for 2 years prior to that he was research chemist; that as chief chemist he instituted research problems and supervised the work of the chemists performed in the various departments, including the work of the two previous witnesses who testified in this case; that he checked analyses made by them; that he had studied chemistry at the

Universities of Bruenn, Czechoslovakia, and Halle, Germany; that his studies had included the subject of coal tars, of which cresylic acid was one; that since leaving college he had continued his studies of disinfectants generally, not specifically of cresylic acid; that since 1926 he had been analyzing cresylic acid shipments for the plaintiff and has been responsible for the specifications drawn up by the plaintiff to cover material used in the production of lysol disinfectant; that cresylic acid is a fraction of tar acids which consist essentially of the three cresol isomers, ortho, meta, and paracresol, but which ·may contain in addition varying proportions of phenol or carbolic acid, or of high-boiling tar acids; that isomeric substances are those of the same molecular weight, but different chemical configuration; that the terms cresol and cresylic acid are synonymous terms and are always used interchangeably, except if the term cresol was qualified by a designation "U. S. P. Cresol," in which case it meant a product answering the specifications laid down by the United States Pharmacopoeia; that "Cresol U. S. P." was a grade of cresylic acid answering the specifications of the United States Pharmacopoeia, and that there were various grades of cresylic acid. A summation of the testimony of the witness regarding exhibits 1 and 2 is that they show that the material analyzed was cresylic acid, of which 95 per centum distilled below 200° C.

When asked whether or not the involved merchandise was cresylic acid which on being subjected to distillation yields in the portion distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate, this witness also answered in the affirmative.

On cross-examination this witness frankly admitted that he had never bought nor sold cresylic acid and that his testimony was entirely from a scientific standpoint, except insofar as his duties brought him in contact with the buying department in the preparation of contracts of purchase so as to conform with the required specifications, and checking the plaintiff's advertisements to see that they were technically correct.

At no point does the defendant appear to question the accuracy of the analyses, exhibits 1 and 2, of the imported material, nor the accuracy of the conclusions in a chemical sense that these analyses showed that the imported merchandise was cresylic acid which when subjected to distillation yielded in the portions distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate. The defendant did attempt to show however that what was known chemically to be cresylic acid conforming to the requirements of paragraph 27 (b) was not known as cresylic acid in the commerce of the United States. To this end the defendant offered the testimony of three witnesses. Although at times the testimony of

these witnesses was confusing and apparently contradictory, as we understand their testimony they were in substantial agreement that on and before June 17, 1930, the date of the enactment of the present tariff act, the term cresylic acid had no definite meaning which was uniform and general throughout the wholesale trade in the United States; that the terms "cresol" and "cresylic acid" were not synonymous or interchangeable commercially; that cresol was a coal-tar distillate of which 50 per centum distills at a boiling point of 204° C.; that commercially the term "cresylic acid" would be applied only to tar distillates distilling more than 50 per centum at boiling points from 204° C. and upward; that although the imported merchandise conforms to this test in that at 215° C. it distills 75 per centum of the original distillate, nevertheless it would not be considered as cresylic acid commercially; that there were purchasers who ordered tar distillates with specifications as to boiling point and distilling under the name cresylic acid which the trade did not consider to be cresylic acid, and that such orders were filled without difficulty and billed to the purchasers as cresylic acid.

If the defendant offered the above testimony in an effort to establish commercial designation, it falls far short of its intended purpose, and such testimony also fails to establish any trade practice which was definite, uniform and general throughout the United States, except it might show a practice of filling orders for cresylic acid as cresylic acid irrespective of the specifications as to boiling point and distillation.

In our view the above testimony shows that the merchandise at bar conforms to the trade requirement that a tar distillate distill more than 50 per centum at a boiling point above 204° C. in order to be considered cresylic acid. This is not out of harmony with the testimony given by plaintiff's witnesses, to the effect that the involved merchandise is cresylic acid which when subjected to distillation yielded in the portions distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate.

The testimony offered by plaintiff in rebuttal adds nothing new, but simply accentuates the previous testimony as to the lack of any uniform commercial designation for cresylic acid or uniform trade practice as to just what constituted cresylic acid.

Counsel for both parties discuss at some length in their briefs filed herein the congressional intent in enacting the law here involved, based on legislative history. As we understand this legislative history, as stated and discussed in said briefs, prior to the enactment of the Tariff Act of 1922 little or no protection was given to the industry producing coal-tar distillates, including cresylic acid, and that by the Tariff Act of 1922 there was imposed a duty of 40 per centum ad valorem and 7 cents per pound on—

\* \* \* all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate; \* \* \*.

From the foregoing it is obvious that without mentioning either, the congress lumped together for tariff purposes cresol and cresylic acid. However, thereafter, and on July 20, 1927, President Calvin Coolidge by proclamation, T. D. 42337, carved out of the language used by the Congress:

\* \* \* cresylic acid provided for in paragraph 27 of Title I of the said act in the clause for all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate, \* \* \*.

and reduced the duties thereon from 40 per centum ad valorem and 7 cents per pound, as originally provided for in the act of 1922, as quoted above, to 20 per centum ad valorem and 3½ cents per pound.

The language last above quoted was adopted by the Congress and enacted in paragraph 27 (b) of the act of 1930, while paragraph 27 (a) (2) of the act of 1930 is a reenactment, practically unchanged, of the language found in the act of 1922, except that after the opening words, "all distillates," there are inserted in parenthesis the words "except those provided for in subparagraph (b)."

When the plaintiff established that the merchandise in question was a distillate, cresylic acid, which meets all the requirements contained in paragraph 27 (b), then the merchandise is provided for in said paragraph 27 (b) and the exception contained in paragraph 27 (2), "(except those provided for in subparagraph (b))," immediately comes into operation, and the instant merchandise is thereby excluded from the provisions of said paragraph 27 (2) (5).

A careful reading of the competing provisions of law leaves little, if any, doubt as to the proper classification of the instant merchandise, but if any doubt should exist, such doubt must be resolved in favor of the citizen. In the case of *Hartranft* v. *Wiegmann*, 121 U. S. 609, the Supreme Court of the United States, in discussing this point, said:

We are of opinion that the decision of the circuit court was correct. But, if the question were one of doubt, the doubt would be resolved in favor of the importer, "as duties are never imposed on the citizen upon vague or doubtful interpretations."

To the same effect was the holding of the United States Supreme Court in the case of *American Net and Twine Co.* v. *Worthington*, 141 U. S. 468, as follows:

We think the intention of Congress that these goods should be classified as "gilling twine" is plain; but were the question one of doubt, we should still feel

obliged to resolve that doubt in favor of the importer, since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language.

Again in the case of *Eidman* v. *Martinez*, 184 U. S. 578, 46 L. ed, 697, the United States Supreme Court said:

It is an old and familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language, and that a liberal construction be given to words of *exception* confining the operation of duty (*Warraington* v. *Furbor*, 8 East, 242, 247; *Williams* v. *Sanger*, 10 East 66, 69; Denn *ex dem. Manifold* v. *Diamond*, 4 Barn. & C. 243, 245; *Tompkins* v. *Ashby*, 6 Barn. & C. 541; Doe *ex dem. Scruton* v. *Smith*, 8 Bing. 146, 152; *Wroughton* v. *Turtle*, 11 Mees & W. 561, 567; *Gurr* v. *Scudds*, 11 Exch. 190) though the rule regarding exemptions from general laws imposing taxes may be different. Cooley, Taxn. 146; *Re Enston*, 113 N. Y. 174, 177, sub nom. *People* v. *Sherwood*, 3 L. R. A. 464, 21 N. E. 87.

We have ourselves had repeated occasion to hold that the customs revenue laws should be liberally interpreted in favor of the importer, and that the intent of Congress to impose or increase a tax upon imports should be expressed in clear and unambiguous language. * * *.

In view of the above-quoted excerpts of law which we consider equally as applicable here as in the cases in which they appear, we would have no hesitancy in holding in favor of the plaintiff in this case, even assuming that there was some doubt in this case, but when we consider the legislative history hereinbefore set out the congressional intent is made entirely clear, and any and all doubt is removed.

It is not seriously contended by the defendant that the instant merchandise is not a distillate, and even if it were, that fact is amply established by the record, as is also the fact that it is cresylic acid which on being subjected to distillation yields in the portion distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate. It is therefore definitely excluded from the provisions of paragraph 27 (2) (5), by reason of the exception therein contained, and falls squarely within the provisions of paragraph 27 (b).

After a careful consideration of the record and for the reasons stated, we hold the merchandise which was assessed with duty at 40 per centum ad valorem and 7 cents per pound under paragraph 27 (2) (5) of the act of 1930, to be properly dutiable at only 20 per centum ad valorem and 3½ cents per pound under paragraph 27 (b) of said act, as cresylic acid which on being subjected to distillation yields in the portion distilling below 215° C. a quantity of tar acids equal to or more than 75 per centum of the original distillate, as claimed by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.