CORNELIUS V. CROSS et al., as Executors, etc., Appellants, *v.* UNITED STATES TRUST COMPANY of New York, as Trustee, etc., et al., Respondents.

An action cannot be maintained to declare invalid a testamentary disposition of personal property in this state, made in and by a resident of another state, lawful and valid at the place of the testator's domicile, but which would be invalid if the will had been one governed by the laws of this state, although the beneficiaries may be domiciled here.

Personal property is subject to the law of the owner's domicile, both in respect to a disposition of it by act *inter vivos*, and to its transmission by will or by succession upon the owner dying intestate.

Where, therefore, the will of a resident of Rhode Island, admitted to probate in that state, created a trust in personal property, to be administered in this state, for the benefit of residents therein, the trustee being a New York corporation, which trust was in contravention of the statute of this state against perpetuities, and where, pursuant to the directions of the will, the trust fund was deposited with the trustee in this state, *held*, that the validity of the trust was to be determined by the laws of Rhode Island; and it being valid under those laws, an action was not maintainable here to have it declared invalid.

*It seems* the want of corporate capacity in the trustee to act would not be fatal to the trust.

*Chamberlain* v. *Chamberlain* (43 N. Y. 424), limited and distinguished.

*Manice* v. *Manice* (43 N. Y. 387); *Despard* v. *Churchill* (53 id. 192); *Draper* v. *Harvard College* (57 How. Pr. 269); *Kennedy* v. *Town of Palmer* (1 T. & C. 581); *Mapes* v. *Am. Home Mission Soc.* (33 Hun, 360), distinguished.

Reported below, 61 Hun, 282.

(Argued February 4, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 16, 1891, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward C. James* for appellants. The court below erred in holding that all the provisions, trusts, and remainders con-

tained in this will, were governed by the laws of her domicile at the time of her death.   It should have held that they were governed by the law of her domicile at the time of its execution.   That is by the law of New York, and not by the law of Rhode Island.   (Laws of 1876, chap. 118, §§ 3, 5; Code Civ. Pro. §§ 2612, 2613; *Harteau* v. *Harteau*, 14 Pick. 181; *In re Florance*, 54 Hun, 328.)   The law of New York governs the validity of the particular trusts, attempted to be created in the eighth article of the said will.   (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 431–435; *Manice* v. *Manice*, Id. 303, 387–389; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Kennedy* v. *Town of Palmer*, 1 T. & C. 581; *Mapes* v. *A. H. M. Society*, 33 Hun, 360; *Vansant* v. *Roberts*, 3 Md. 119; *Oliphant* v. *Hendrie*, 1 Brown's Ch. 571; *Mackintosh* v. *Townsend*, 16 Ves. 330; *Atty.-Gen.* v. *Lepine*, 19 id. 399; *Emory* v. *Hill*, 1 Russ. 112; *Minet* v. *Vuilliam*, 1 id. 113; *Fordyce* v. *Bridges*, 2 Phil. 497, 515; *Green* v. *Van Buskirk*, 5 Wall. 307; 7 id. 139; *Harvey* v. *R. I. L. Works*, 3 Otto. 664, 674; *Warner* v. *Jaffray*, 96 N. Y. 248; *Keller* v. *Paine*, 107 id. 83.)   The trust as to the $115,000 of bonds, violates the statute against perpetuities.   (*Ward* v. *Ward*, 105 N. Y. 68, 74, 75; *Smith* v. *Edwards*, 88 id. 92; *Colton* v. *Fox*, 67 id. 348; *Knox* v. *Jones*, 47 id. 389; *Schettler* v. *Smith*, 41 id. 328; *Coster* v. *Lorillard*, 5 Paige, 172; 1 Wend. 265; *Bowers* v. *Beekman*, 16 Hun, 268; *Morris* v. *Porter*, 52 How. Pr. 1.) The trust as to the $585,000 of bonds presents this difficulty, that the issue who shall be under twenty-five years of age at the death of one of these beneficiaries, may be persons born since the death of the testatrix, and thus the absolute ownership of those parts of the principal which are to be paid to such issue, when they respectively reach the age of twenty-five years may be suspended upon lives, or parts of lives which were not in being at the creation of the estate.   This is not allowed.   (*Schettler* v. *Smith*, 41 N. Y. 328; *Tiers* v. *Tiers*, 98 id. 568, 573, 574; *Manice* v. *Manice*, 43 id. 305, 384; *Savage* v. *Burnham*, 17 id. 561, 576, 577; *Post* v. *Hover*, 33 id. 593, 598; *Harrison* v. *Harrison*, 36 id. 543; *Van*

*Schuyver* v. *Mulford*, 59 id. 432; *Kennedy* v. *Hoy*, 105 id. 134.) It is not necessary to resort to the laws of Rhode Island for a rule of distribution. (*In re Hughes*, 95 N. Y. 55, 60; *Despard* v. *Churchill*, 53 id. 192; *Parsons* v. *Lyman*, 20 id. 103; *Sherman* v. *Pope*, 85 id. 123; *O'Dea* v. *O'Dea*, 101 id. 23; *Riker* v. *Cornwall*, 113 id. 115; *In re Bonnet*, Id. 522–524; *Cruikshank* v. *Home for Friendless*, Id. 337; *In re Crossman*, Id. 503; *In re Benson*, 96 id. 499; *King* v. *Strong*, 9 Paige, 94.) The United States Trust Company has no power to execute those parts of the trusts invalid by the laws of this state. (Laws of 1853, chap. 204, §§ 2, 27; Laws of 1863, chap. 60; 43 N. Y. 424.) The surviving executors and trustees have a right to maintain this action. (*O'Dea* v. *O'Dea*, 101 N. Y. 23; *Sherman* v. *Pope*, 85 id. 123.) The individual plaintiffs have a right to maintain this action. (*Wager* v. *Wager*, 89 N. Y. 161; *Holland* v. *Alcock*, 108 id. 312; *Read* v. *Williams*, 125 id. 560.)

*Edward W. Sheldon* for Trust Company, respondent. The domicile of the testatrix was in Rhode Island, both at the time the will was made and at her death. (*Tuska* v. *O'Brien*, 68 N. Y. 449; *Depuy* v. *Wurtz*, 53 id. 556; *Peterson* v. *C. Bank*, 32 id. 21; *Hunt* v. *Hunt*, 72 id. 217; *Cheever* v. *Wilson*, 9 Wall. 108; *Nostrand* v. *Knight*, 123 N. Y. 614.) The law of the domicile of the testatrix should govern in the construction of the controverted trusts, and by that law all the limitations in question are valid. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Manice* v. *Manice*, Id. 303; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Kennedy* v. *Town of Palmer*, 1 T. & C. 581; *Mapes* v. *A. H. M. Society*, 33 Hun, 360; *Despard* v. *Churchill*, 53 N. Y. 192; *Richards* v. *Dutch*, 8 Mass. 506; *Hobson* v. *Hale*, 95 N. Y. 588; *Fellows* v. *Miner*, 119 Mass. 541; *Sewall* v. *Wilmer*, 132 id. 131; *In re Liddiard*, L. R. [14 Ch. Div.] 310; *Cropley* v. *Cooper* 19 Wall. 168; *Poor* v. *Considine*, 6 id. 458; *Smithers* v. *Wilcox*, 9 Ves. 233.) The testamentary scheme is valid in execution as well as in conception. (Laws of 1853, chap. 204.) No law

nor policy of this state is violated by permitting the trustee to carry out the testatrix's plan. (*Despard* v. *Churchill*, 53 N. Y. 200; *Moultrie* v. *Hunt*, 23 id. 394; *T. G. T. Co.* v. *C., B. & Q. R. R. Co.*, 123 id. 37; *Gilman* v. *McArdle*, 99 id. 451; *U. S.* v. *Fisher*, 2 Cranch, 389.) Even if the trusts cannot be legally administered by a New York trustee, the scheme will not be permitted to fail. (*Knox* v. *Jones*, 47 N. Y. 389; *Savage* v. *Burnham*, 17 id. 561; *Harrison* v. *Harrison*, 36 id. 543; *Manice* v. *Manice*, 43 id. 303; *Tiers* v. *Tiers*, 98 id. 568; *Henderson* v. *Henderson*, 113 id. 1; *Benedict* v. *Webb*, 97 id. 460; *Holland* v. *Alcock*, 108 id. 312.) The plaintiffs are estopped to defeat the plaintiffs' plan. (*Caulfield* v. *Sullivan*, 85 N. Y. 153; *Rodermund* v. *Clark*, 46 id. 354; Bigelow on Estoppel [5th ed.], 673; *Scholey* v. *Rew*, 23 Wall. 331; *Calhoun* v. *Miller*, 121 N. Y. 69.)

*Nicholas Quackenbos* for respondents. The law of the domicile of the testatrix should govern in the construction of the controverted trusts. (2 Kent's Comm. [12th ed.] 429; *Bascom* v. *Albertson*, 34 N. Y. 584; *Wood* v. *Wood*, 5 Paige, 596; *Curtis* v. *Hutton*, 14 Ves. 537; *Banks* v. *Phelan*, 4 Barb. 88; Hill on Trustees, 454, 468; *Phelps* v. *Pond*, 28 Barb. 127; 23 N. Y. 69; *Despard* v. *Churchill*, 53 id. 192; *Sherman* v. *Page*, 85 id. 123; *Parsons* v. *Lyman*, 20 id. 103; *Richards* v. *Dutch*, 8 Mass. 506; *In re Hughes*, 95 N. Y. 55; *Hobson* v. *Hale*, Id. 588; *Fellows* v. *Miner*, 119 Mass. 541; *Sohier* v. *Burr*, 127 id. 221; *Sewall* v. *Wilmer*, 132 id. 131; *In re Liddiard*, L. R. [14 Ch. Div.] 310; *Barry's Appeal*, 88 Penn. St. 131; Bigelow on Est. [5th ed.] 673.) The trusts were valid in Rhode Island. (*Cropley* v. *Cooper*, 19 Wall. 168; *Poor* v. *Considine*, 6 id. 458; *Smither* v. *Wilcox*, 9 Ves. 233.) As to the validity of the trusts in New York, the valid trusts may be separated from the void and sustained. (*Shipman* v. *Rollins*, 98 N. Y. 311; *Savage* v. *Burnham*, 17 id. 561; *Harrison* v. *Harrison*, 36 id. 543; *Manice* v. *Manice*, 43 id. 303; *Tiers* v. *Tiers*, 98 id. 568; *Henderson* v. *Henderson*, 113 id. 1; *Despard* v. *Churchill*,

53 id. 200.)   If, in spite of the domicile of the testatrix, any of the trusts in question are invalid in New York, it is due not to their inherent illegality, but to the disability of the trustee.  (Perry on Trusts [4th ed.], §§ 38, 45; *Levy* v. *Levy*, 33 N. Y. 102.)   The domicile of the testatrix was in Rhode Island.  (*Tuska* v. *O'Brien*, 68 N. Y. 449.)   The accounting proceedings by the executors in Rhode Island are conclusive upon the plaintiffs.  (2 Pars. on Cont. [6th ed.] 581; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Peterson* v. *C. Bank*, 32 id. 21, 40; Whart. on Confl. of Laws, § 592.)

*Martin T. McMahon* for respondent Morse.   The validity of the controverted trusts must be determined by the laws of Rhode Island.  (*Hunt* v. *Hunt*, 72 N. Y. 217.)   The law of the domicile of the testatrix at the time of her death governs the disposition of personal property.  (*Dupuy* v. *Wortz*, 53 N. Y. 556; *Despard* v. *Churchill*, Id. 192, 200; *Lyons* v. *Townsend*, 33 id. 558; *Mills* v. *Fogal*, 4 Edw. 559; *Chamberlain* v. *Chamberlain*, 43 N. Y. 432; *Parsons* v. *Lyman*, 20 id. 103.)   The statute against perpetuities in this state cannot reach dispositions of personalty by persons domiciled where different laws prevail.  (1 R. S. 723, § 14.)   Under the laws of the state of Rhode Island, the provisions of article 8 of the will are good, valid and effectual.   (Pub. Stat. R. I. chap. 182, §§ 2, 7.)   If a trust created by will contains provisions, some of which illegally suspend the power of alienation, while others do not, and they are separable, the latter will be sustained though the former fail.  (*Post* v. *Hover*, 33 N. Y. 593; *Manice* v. *Manice*, 43 id. 368, 384; *James* v. *Beasley*, 14 Hun, 520.)

O'BRIEN, J.   The will of Phebe Jane Cross, bearing date May 29, 1877, disposed of a large estate for the benefit of her husband and four children.   After making sundry absolute and specific bequests, she gave to the United States Trust Company, a New York corporation, seven hundred thousand dollars, in railroad bonds specifically described, to have and to

hold in trust for the purpose of collecting and receiving the income thereon, until the payment of the principal, and upon such payment, to invest and keep invested the proceeds, in safe interest paying securities, and to collect and receive the income on the same, and to apply it to the execution of five separate trusts for the benefit primarily of her husband and each of her four children. As none of the estate is involved in this action except the portion embraced in these trusts, and that only in a general sense, it is only necessary to give a brief outline of the scheme of the testatrix, with respect to this part of her property, without any very minute examination of the legal questions which might possibly arise upon the construction of this part of the instrument, in some other form of action. The bonds above mentioned were divided into five parts and the testator directed the trust company, as trustee, to pay the income of one part to her husband during his life, and upon his death, to her grandchildren in equal shares, until the death of her surviving child, and as there were four of the children, the trust was, therefore, to continue during the life of the husband and all of the four children respectively. Upon the death of the last surviving child the principal was to be disposed of by the trustee by dividing it into as many parts as there should be grandchildren of the testatrix living, and deliver one part to each who had then reached the age of twenty-five years, but if any of them were under that age then the trustee was directed to set aside and hold the parts of such grandchildren, and pay the income to them until they should reach that age, when they were to receive the principal absolutely. The trusts for the benefit of the children were identical as to each but differed slightly from that for the husband. The trustee was directed to pay the income of the part set aside for each child to him or her for life. If either of the children died without children, then the income which such deceased child was to receive under the trust, if living, was to be paid to the survivors in equal shares and to the children of any deceased child, the latter to take as a class, the share that the deceased parent would have taken, if living. If either of

the children of the testatrix should die, leaving children, then the trustee was directed to divide the principal, or part from which the deceased parent received the income, into as many parts as there were children of such deceased parent surviving and deliver one of such parts to each of said children, who had then attained the age of twenty-five years, to hold absolutely. But if any of said children were under that age then the trustee was to hold the share of such child, and pay the income thereof to him, until he arrived at that age, when he was to receive the principal absolutely, and if any child of such deceased parent should die, before reaching the age of twenty-five, then his part was to be paid to his surviving brothers and sisters, and if all the children of such deceased parent should die, before arriving at that age, then the trustee was to pay the share of the deceased parent, to which they would have been entitled if living at said age, in equal shares to the children of the testatrix, then living, and if none of the children of the testatrix were then living, the trustee was directed to pay said sums over to her surviving grandchildren, in equal shares, to hold absolutely. Upon the death of the last surviving child, the trustee was directed to divide all the bonds and securities remaining in its possession, in the manner above described, in which the principal of the fund for the benefit of the husband was to be disposed of. The husband and two of the sons were appointed executors of the will, and the residuary estate was bequeathed to them in trust to convert into money and to pay certain legacies, and the remainder to the heirs at law of the testatrix, "who, by the laws of the state of New York relating to the distribution of intestate estates, would have been entitled to receive the same," in case of intestacy. The husband died on the 9th day of June, 1889, and that part of the trust intended for his benefit has terminated. Mrs. Cross left two sons and two daughters. One of the sons is married, but has no children; the other never married. One of the daughters is a widow, and has three children, one of whom is married. The other is married, but without children. The two sons, as surviving executors and trustees under the will,

and individually with the daughter who is without children, brought this action against the trust company, as trustee, and the widowed daughter and her three children, for the purpose of procuring a judgment declaring the trusts void, after the death of each of the primary beneficiaries, on the ground that they are in contravention of the statute against perpetuities.

With respect to the provision for the benefit of the husband, the absolute ownership of the property bequeathed was suspended by the terms of the will for more than two lives in being at the death of the testatrix. The fund could not be released from the trust till the death of the husband and the last survivor of the four children, and the case is, therefore, within the statutory prohibition against the suspension of the absolute ownership and power of disposition of personal property. (*Ward* v. *Ward*, 105 N. Y. 68; *Smith* v. *Edwards*, 88 id. 92; *Colton* v. *Fox*, 67 id. 348; *Schettler* v. *Smith*, 41 id. 328; *Knox* v. *Jones*, 47 id. 389; *Coster* v. *Lorrillard*, 5 Paige, 172; *S. C.*, 14 Wend. 265.)

The absolute ownership and power of disposition was further suspended upon the lives of those grandchildren of the testatrix who were under twenty-five years of age, at the death of her last surviving child, and until such grandchildren, respectively, arrived at that age, as to the share of each of them in the personal estate, and this might possibly involve a suspension of the whole or some part of the property embraced in the trust upon a life or lives not in being at the death of the testatrix. (*Van Cott* v. *Prentice*, 104 N. Y. 56; *Hawley* v. *James*, 16 Wend. 61; *Smith* v. *Edwards*, *supra*.)

The trusts created for the benefit of the children seem to be open to the same objection. In so far as the duration of the trust is concerned, it might be held good, in the contingency of the death of the first beneficiary, leaving children, because in that case the suspension is only upon the life of such beneficiary, whose children take absolutely. The difficulty of this feature of the case is that, as to the children of a deceased parent, who are under twenty-five at his death, the absolute ownership is liable to be further suspended upon the life of a

child born after the death of the testatrix. (*Tiers* v. *Tiers*, 98 N. Y. 568.)

But the disposition of the bonds, in the event of the death of any of the children without issue, would seem to be clearly against the terms of our statute, as in that event the absolute ownership would be suspended during the life of such child, then during the successive lives of the other three, or the last survivor of them. Then there was liable to be a further suspension during the minority, under twenty-five, of any grandchild living at the death of the last surviving child of the testatrix, as to the share of such grandchild, or for his or her life within twenty-five years. This brief reference to the legal questions involved in the will, growing out of the bequests in trust, under our statute, has been thought necessary only for the reason that one of the defendants in this action, a grandchild of the testatrix, is an infant. Except for that fact it might be sufficient to say that upon the argument there was no attempt made upon the part of any of the learned counsel for the defendants to uphold these provisions of the will as valid, under our statute. On the contrary they must be understood by the course of the argument as admitting that the trusts are not valid under our law, but, notwithstanding this, they strenuously urge that all the provisions of the will are legal for reasons which must now be noticed. It has been found as a fact, conclusive upon us, that from a time anterior to the execution of the will, up to the time of her death on the 29th of June, 1878, the testatrix and her husband were inhabitants of and domiciled in the state of Rhode Island; and further, that by the laws of that state, then and now in force, all the provisions, trusts and remainders contained in the will are valid and effectual. The will was admitted to probate and the executors accounted in that state. They transferred the bonds embraced in the trust to the trustee and these provisions of the will have been executed and carried out since the death of the testatrix. The bonds disposed of by the provisions in question were always actually within this state and there seems to be no substantial controversy between the counsel with reference to the legal propositions

asserted in behalf of the plaintiffs, namely, that all the primary
trusts are valid and can be upheld under our law upon the prin-
ciple that where several trusts are created by a will, which are
independent of each other and each complete in itself, some of
which are legal and others illegal, and the legal can be separated
from the illegal and upheld, without doing injustice or defeat-
ing what the testator might be presumed to wish, the illegal
trusts may be cut off and the legal permitted to stand. (*Ken-
nedy* v. *Hoy,* 105 N. Y. 134; *Manice* v. *Manice,* 43 id. 384;
*Schettler* v. *Smith, supra; Savage* v. *Burnham,* 17 N. Y.
561, 576, 577; *Post* v. *Hover,* 33 id. 593, 598; *Harrison* v.
*Harrison,* 36 id. 543; *Van Schuyver* v. *Mulford,* 59 id. 432;
*Tiers* v. *Tiers, supra.*)

It is not necessary to a decision of this case to point out the
precise application of this rule to the trusts in question, and,
therefore, we will not stop to consider how far, if at all, the
elimination of the subsidiary trusts would interfere with the
scheme of the testatrix as a whole, or the precise portion
of the disposition that would be permitted to stand under
our law.

On this principle the only part of the property in question
yet released from the trust is the share set aside for the benefit
of the husband, the trust in his favor having terminated by his
death. The controversy is thus reduced, so far as this court is
concerned, to a single question, and that is, whether this action
can be maintained to declare invalid a disposition of personal
property by will, perfectly lawful and valid at the place of the
owner's domicile, when made, but which would be invalid if
this were a New York will. The property and the trustee are
here. So are all the beneficiaries, except one of the grand-
children, who resides in the state of Connecticut. From the
present situation of all parties interested in the property thus
disposed of, it may be assumed that the trust is to be adminis-
tered here.

It is a general and universal rule that personal property has
no locality. It is subject to the law of the owner's domicile as
well in respect to a disposition of it by act *inter vivos,* as to its

transmission by last will and testament, and by succession upon the owner dying intestate. This is, in substance, the language in which Judge DENIO stated the law in this court, and which he concisely and clearly extracted from the authorities cited by him. (*Parsons* v. *Lyman*, 20 N. Y. 112.)

The learned judge added that "the principle, no doubt, has its foundation in international comity, but it is equally obligatory, as a rule of decision on the courts, as any legal rule of purely domestic origin. It does not belong to the judges to recognize or to deny the rights which individuals may claim under it at their pleasure or caprice; but it having obtained the force of law by user and acquiescence, it belongs only to the political government of the state to change it whenever a change becomes desirable." We have in this case the grandchildren of the testatrix, who, next after her husband and children, were the objects of her bounty, claiming certain interests in the corpus of the trust estate which vested in them under the terms of the will and the law of the domicile. They say that we have no right to use the law of New York for the purpose of cutting them off from their inheritance, lawfully bequeathed to them by the law of the state where their ancestor was domiciled when she made formal disposition of her property. It is manifest that this presents a question, touching the disposition and transmission of personal property by will, which must frequently arise, of the very highest importance. The plaintiffs admit that so far as concerns the formal requisites essential to the validity of the will, as a testamentary instrument, the capacity of the testatrix and the construction of its provisions, the law of the domicile must govern, but the validity of the particular trusts attempted to be created depends upon the law of the domicile of the legatee and the government under which the fund is to be held and administered. In other words, it is claimed that this case forms an exception to the general rule that a disposition of personal property is governed by the law of the domicile of the owner, and that the trust must stand or fall, not upon that law, but upon the law of the domicile of the legatee. The reason for this

exception is said to be that we will not permit a trust to be maintained and administered within the state which is contrary to its public policy, though valid where created. The mind does not readily accept the assertion that it is, in fact, contrary to the public policy of this state to permit the property embraced in these trusts to be held and used here according to the terms of the will of the owner and the law of the domicile. Should our legislature deem it for the public good to repeal the statute relating to wills and to provide that all property should, upon the death of the owner, pass under the laws of intestacy, a disposition by will of personal property, actually within the territory of the state, but owned by a person domiciled in another state, would still be valid providing it was valid by the law which governed the owner. When it is urged that we are bound by foreign law as to all the formal requisites of a will, as a testamentary instrument, the capacity of the testator to make it and its legal construction, meaning and effect, and not bound by such law, with respect to the particular bequests by which the testatrix has distributed her property among her heirs and next of kin, it is not perceived that such a distinction has any sound reason or principle to rest upon. A cause of action or right to property created by the statute laws of another state and arising there, is recognized here, and may be enforced, though our own statute on the same subject may be different in details. The two statutes need not be identical in terms or precisely alike. It is enough if they are of similar import and character, founded upon the same principle and possessing the same general attributes. ( *Wooden* v. *W. N. Y. & P. R. R. Co.*, 126 N. Y. 15.)

It does not follow that a trust created by the laws of another state is contrary to our public policy with respect to accumulations and the suspension of the absolute ownership, simply because the law of that state differs in some respects from ours. It may be assumed that all our sister states have enacted laws on this subject having the same general purpose in view as our own. Some of them permit a longer and others provide for a shorter period of suspension, but the policy of all is the

same. The state of Rhode Island has a statute on this subject framed to secure the same end as our own. It provides that no person shall have a right to devise any estate in fee tail for a longer time than to the children of the first devisee. The first devisee to take an estate for life only, the remainder on his decease to vest in his children or issue generally, according to the directions of the will. (Laws R. I. ch. 182, § 2; *Sutton* v. *Miles*, 10 R. I. 348.) While this statute in terms applies to realty, the principle embodied in it has been extended to bequests of personal property by the decisions of the courts of equity of that state. The testatrix in the case at bar could, if domiciled here, have created the trust in question and suspended the absolute ownership of the principal of the fund till the death of the survivor of the two youngest grandchildren living at her death, and yet this disposition might result in keeping the property under the trust for as long a period of years as does the present will. The only material difference in the law of the two states on this subject is that in each a different rule is adopted for measuring the period within which absolute ownership may lawfully be suspended. Granting that in most cases this period might be longer in Rhode Island than in New York, have we any right for that reason to declare the dispositions of this will void? If so then a person desiring to make a will must not only know the law of his domicile, but also the law of every other country in which his personal estate may happen to be at his death, and our courts will become the resort of dissatisfied heirs, or legatees, seeking to nullify wills, valid by the laws of the place where the persons who made them were domiciled. The question is not changed by the circumstance that the trustee and the trust fund is within our jurisdiction and all the beneficiaries but one are now residents of this state. The will was valid or not at the moment of the death of the testatrix, and if it was valid then it is valid now. Nothing that has since transpired can change any right which it confers. Had a trustee been selected at the place of the domicile, instead of here, he would have been entitled to receive the bonds from their custodian in New

York, and our courts would have enforced that right, as they have in at least three of the cases which will be noticed hereafter. And had the trustee afterwards moved into this state and brought the property with him, he could have held it by virtue of his original title under the will. It would be pushing the doctrine of state policy too far to hold now, after the trusts have been treated as valid by all concerned for twelve years, that they are void. When an instrument affecting the title to personal property, valid in its origin, is sought to be set aside upon the ground that it is in some way contrary to the policy of our laws a clear case must be established.

In a recent case in this court, its aid was sought to set aside bequests in a will made by a person here to charitable and benevolent corporations in another state, within two months prior to his death. Under our statute of 1848, providing for the incorporation of similar institutions, such bequests were prohibited as to such corporations and the argument in support of the action was that to permit bequests made here to the foreign societies, within two months, to stand would be against our public policy on this subject; but as it appeared that no such restrictions existed in the state where the legatees were located, the bequests were held to be valid. (*Hollis* v. *Drew Theological Sem.* 95 N. Y. 166.) Judge EARL, in speaking for the court, employed language, in discussing the question, which seems to be very much in point: "The courts will not enforce contracts or the payment of legacies which are against public policy. But it is not always easy to determine when contracts and legacies are against public policy. Some cases are plain, and have been settled by the repeated decisions of the courts. Contracts tending to undermine public morals, to endanger the public health or the public safety, to prevent competition at judicial sales, to improperly influence legislation or the action of public officers or the administration of justice, and to unreasonably restrain trade or marriage; all these have been condemned as against public policy. In condemning such contracts, judges have acted upon what they deemed sound public policy, and have undoubtedly, in some

measure and in a remote sense, assumed legislative functions. It is difficult to define and limit the power thus to enforce public policy which is not found in the statute law, and it should be exercised only in clear cases, and generally within limits already defined by decisions of acknowledged authority, based upon rules of common law. There is certainly no occasion for stretching the power so as to apply it to new or doubtful cases in a state where the legislature is in session one-third of the year, and thus competent to indicate the public will as to any line of supposed public policy.   *   *   *

"Contracts which are held to contravene public policy are always essentially vicious or always have evil tendencies. They are not sometimes valid and sometimes invalid, but are always invalid, and the courts will never tolerate or enforce them."

The learned judge, to fortify his position, quoted approvingly the language of Judge STORY in the *Girard Will* case (2 How. [U. S.] 127): "Nor are we at liberty to look at general considerations of the supposed public interests and policy of Pennsylvania upon this subject, beyond what its Constitution and laws and judicial decisions make known to us. The question, what is the public policy of a state, and what is contrary to it, if inquired into beyond these limits, will be found to be one of great vagueness and uncertainty, and to involve discussions which scarcely come within the range of judicial duty and functions, and upon which men may, and will, complexionally differ."

It is certain that there is no statute in this state that in terms condemns trusts in foreign wills that would be illegal if made here, and unless our judicial decisions furnish a rule on this subject, we are left to these uncertain and conflicting notions in regard to public policy, which Judge STORY said "Scarcely come within the range of judical duty and functions." It would be difficult to furnish a stronger illustration of the correctness of this remark than is to be found in the very able discussion of the question upon the briefs of counsel in this case. With commendable industry and learning they have explored the whole field of discussion, but the leading

cases, supposed to have a bearing on the question, are cited on both sides. The question as to what is public policy, and what is contrary to it, is involved in so much uncertainty and confusion, as it must be from its very nature, that each side has been able to find, in the cases of his opponent, some expression of opinion favorable to his own views; and yet it can be said that all the cases cited from this court, when properly understood and limited, as authority to the questions actually passed upon, were correctly decided.

The leading case relied upon by the plaintiff is *Chamberlain* v. *Chamberlain* (43 N. Y. 424). The question involved in that case was the corporate capacity of a legatee in another state to take a charitable bequest under a will here, and as it appeared that by the law of the state creating the corporation, and in which it was located, that it had power to take bequests by will, it was held that such bequest to it was valid. Judge ALLEN, in delivering the opinion of the court, said : " The law of the testator's domicile controls as to the formal requisites essential to the validity of the will, as a means of transmitting property, the capacity of the testator, and the construction of the instrument. Personal property has no locality, and, therefore, the law of the domicile of the owner governs its transmission, either by last will and testament, or by succession in case of intestacy. But if, within the *lex domicilii*, a will has all the forms and requisites to pass the title to personalty, the validity of the particular bequests will depend upon the law of the domicile of the legatee, and of the government to which the fund is, by the terms of the will, to be transmitted for administration and the particular purposes indicated by the testator. Whatever may be the law of Pennsylvania, a testator domiciled in that state cannot establish by bequests of personalty to citizens or corporations of this state a charity in trust to be administered here, inconsistent with the policy of the laws of this state. * * * So far as the validity of bequests depends upon the general law and policy of the state, affecting property and its acquisition generally and relating to its accumulation and a suspension of ownership

and the power of alienation, each state is sovereign as to all property within its territory, whether real or personal."

This language is broad enough to cover the plaintiff's contention. But the point we are now considering was not in any sense before the court, and the language of the opinion should be limited to the point under discussion and which was decided. When the learned judge said that the validity of a particular bequest would depend upon the law of the domicile of the legatee, he had reference to the capacity of the legatee to take, and that, of course, depended upon the statutes of Pennsylvania. This is entirely evident from what he says in a subsequent part of the opinion (p. 435): "No allusion has been made to the laws of that state regulating or restraining the accumulation of personal property, or the suspension of the ownership and power of alienation of either real or personal there. The validity of the provision in favor of this society depends upon its power to take and hold in the manner and for the purposes indicated by the testator." The *power to take* was no doubt governed by the law of the domicile of the legatee, as neither the will nor the law of the testator's domicile could confer this power upon a corporation of another state.

The case of *Manice* v. *Manice* (43 N. Y. 387), also cited by both sides, decides nothing, so far as this question is concerned, except that a bequest by a citizen of this state in a will here to Yale College was valid, it having been shown that the college had capacity to take by the laws of its own state. By what law the validity of a trust is to be determined, was not involved in this case. Indeed, it was quite uncertain whether, as to that bequest, there was any trust at all. It was probably an absolute gift (p. 388).

*Despard* v. *Churchill* (53 N. Y. 192) was the case of a disposition by will in California by a citizen of that state, void under the laws of this state in its material provisions, of personal property actually within this state. It was held that the validity of the disposition was to be determined by the law of the testator's domicile, and the court remitted the property

to California to be there administered in conformity with the provisions of the will of the owner.

The learned judge who delivered the opinion of the court, after making reference to our statute against accumulations, said that: "As this sovereignty will not uphold a devise or bequest by one of its citizens in contravention of that policy, it will not give its direct aid to sustain, enforce or administer here such a devise or bequest made by a citizen of another sovereignty." The authority cited for this proposition was *Chamberlain* v. *Chamberlain.* The learned judge added: "Yet it is no part of the policy of this state to interdict perpetuities or accumulations in another state." It is quite significant, however, after what was said about directly aiding in carrying out such a bequest, that this court remitted the property to another state, there to be devoted to a trust which would have been unlawful here. This course was adopted, not on the ground of policy, but because it was always the law in such cases to remit personal estate to the domicile of the owner, in the exercise of a sound judicial discretion. (*Parsons* v. *Lyman, supra ; Harvey* v. *Richards*, 1 Mason, 381–407.)

The plaintiff's argument in this case would seem, logically, to require the court to hold in such a case that as to the property in this state, the owner died intestate, but Judge FOLGER was careful to state the principle upon which the case really turned, for, after referring again to his statement in regard to giving any direct aid in carrying out here such a bequest, he added: "And yet they may not hold the bequest void, when it is valid by the law of the state, by which the disposition of the property is to be governed."

It is plain that the question now before us was not involved in these cases and was not decided. The cases of *Draper* v. *Harvard College* (57 How. Pr. 269); *Kennedy* v. *Town of Palmer* (1 T. & C. 581), and *Mapes* v. *American Home Missionary Society* (33 Hun, 360), in so far as they decide any principle applicable to this question rest upon the authority of *Chamberlain* v. *Chamberlain.*

It can, therefore, be safely asserted that there is no controlling authority in this state in support of the proposition that the validity of bequests in foreign wills may be tested by some other law than that which governs the will in other respects, or that requires us to disregard the disposition made of the fund .in this case under the law of another state. The authorities cited in support of the defendant, or most of them at least, are open to the same criticism as those of the plaintiff. They are not wanting in strong and clear expressions in favor of the rule that the validity of particular bequests in a will is to be determined by the law of the testator's domicile, but in many of them the point was not necessarily involved, and the rule was stated or assumed as the settled law, by way of illustration or for the purpose of re-enforcing some other principle upon which the case turned. (*White* v. *Howard*, 46 N. Y. 144; *Matter of Hughes*, 95 id. 55; *Hobson* v. *Hale*, Id. 588; *Bascom* v. *Albertson*, 34 id. 584; 3 Am. & Eng. Cy. Law, p. 633; Dicey on Domicil, p. 294.)

The rule, however, is well settled in Massachusetts. A citizen of that state made a bequest to a town in New York for the benefit of the poor, which bequest would not be valid if made here, but it was held by the Supreme Court of that state upon full consideration, that the bequest was valid and that its validity was to be determined by the law of the testator's domicile, and not by the law of New York, where the trust was to be executed. The doctrine of that case has ever since been followed in that state. (*Fellows* v. *Miner*, 119 Mass. 541; *Sohier* v. *Burr*, 127 id. 221; *Sewall* v. *Wilmer*, 132 id. 131.) The same rule is laid down by the United States Supreme Court. (*Jones* v. *Habersham*, 107 U. S. 174.)

The courts of this state have been exceedingly liberal in recognizing and enforcing rights acquired under the laws of other states, and even of foreign countries. (*Teel* v. *Yost*, 128 N. Y. 394.) If there is any one of our statutes that may be said to represent a distinct policy of the state, it is that regulating the rate of interest on money. Usury is a vice that avoids contracts, into which it enters, and subjects the party

receiving it to indictment, and yet it is the settled law that a note, made by citizens of this state here, payable to a citizen of another state, at a rate of interest that would be unlawful here, but is lawful there, will be enforced by our courts, in favor of the holder in another state, and that, too, though the note was payable here, it having been given in renewal of a note, upon which the same parties were liable, made and payable in the other state.   In such cases we give effect to the foreign law, though contrary to our own, because it is the law that governs the contract. (*Staples* v. *Nott*, 128 N. Y. 403.) A rule which prescribes that the formal requisites and construction of a will, and the testator's capacity, are to be determined by the laws of one state, and the validity of his dispositions of personal property, by the laws of some other state or country, would be exceedingly inconvenient and uncertain, and no sound principle or decisive authority requires us to sanction it.   All these questions should be determined by the same law.   Effect should be given to this like every other will if that can be done without disregarding legal rules, and we think it can.   Every right that any party acquired under it by the law of the domicile ought in justice and by comity to be respected here.   That law declares these trusts valid and it is binding upon us by that comity, which is part of our municipal law.   The other view would not only defeat the intention of the testatrix, but would be contrary to justice and sound policy.   Our statute relating to the suspension of the absolute ownership of personal property, applies to dispositions made within our own jurisdiction, and when it is deemed wise to extend it to such a case as this, the law-making power, and not the courts, should do it.

It may be doubted whether the corporate powers conferred upon the trustee in this case are broad enough to authorize it to execute a trust created as this was. (Laws 1853, ch. 204 ; Laws 1863, ch. 60.)   But though that question has come in, incidentally, on the argument, it is not properly before us. This is not an action to remove the trustee.   There is no allegation in the complaint that it is incompetent to act and no relief is asked on that ground.   There is no finding or request

to find on that subject. The want of corporate capacity in the trustee to act would not be fatal to the trust. The proper court would not allow the trust to fail because the trustee is disabled, but would appoint a new one. (Perry on Trusts [4th ed.], § 38.)

While not assenting to all the reasons for the decision contained in the numerous opinions below, our conclusion is that the judgment is right, and should be affirmed, with costs.

All concur, except EARL, Ch. J., and PECKHAM, J., dissenting.

Judgment affirmed.