RUCKGABER v. MOORE, Collector.

(Circuit Court, E. D. New York. November 7, 1900.)

1. CITIZENSHIP—WOMEN MARRIED TO ALIENS.
   The political status of a native-born American woman who marries a citizen of France or England, and removes with him to his country, follows that of her husband.

2. INTERNAL REVENUE—WAR REVENUE ACT OF 1898—LEGACY TAX.
   War Revenue Act 1898, § 29 (30 Stat. 464), which imposes a tax upon legacies and distributive shares of personal property which pass "either by will or by the intestate laws of any state or territory," does not apply to a bequest of property, unless such property, in the absence of a will, would be distributable under the intestate laws of some state or territory.

3. SAME.
   Such act contains no provision evidencing an intention to give property, for the purposes of the tax, a situs separate from that of the owner; and it must therefore be presumed that it was intended to apply only in cases where the persons and property have a recognized legal situs within the United States, and not in cases where the transmission of the property which is the subject of the tax is governed by the law of a foreign country, owing to the domicile there of the decedent, although the property itself may be within this country, and be here administered upon.

4. SAME—LAW GOVERNING TRANSMISSION OF PERSONAL PROPERTY.
   Code Civ. Proc. N. Y. § 2694, which provides that the validity and effect of a testamentary disposition of personal property situated within the

state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country of which the decedent was a resident at the time of his death, does not make the foreign law a part of the law of the state in such sense that the primary source of power to transmit or receive property owned by a nonresident alien decedent is found in the laws of the state, so as to bring it within the provisions of War Revenue Act 1898, § 29 (30 Stat. 464), but is merely declaratory of the generally recognized rule, and the title transmitted springs from the foreign, and not the domestic, law.

5. SAME—BEQUEST BY NONRESIDENT ALIEN.
   A woman who was a citizen of, and domiciled in, France, died abroad, and by her will, which was executed and probated in New York, bequeathed to her daughter, also a nonresident alien, property consisting of an account against citizens of New York and stock and bonds of American corporations which were actually within the state. *Held*, that such bequest was not subject to the tax imposed by section 29 of the war revenue act of 1898.

Action to recover the amount of a legacy tax paid under protest under the war revenue act of 1898. On demurrer to complaint.

F. W. & A. E. Hinrichs, John G. Carlisle, William Edmond Curtis, and Henry M. Ward, for plaintiff.

George H. Pettit, U. S. Atty., for defendant.

THOMAS, District Judge. A testatrix, sojourning in the state of New York, duly made her last will, which was admitted to probate in the county of Kings, in that state, where the person confirmed as executor resided. The testatrix was a creditor of persons residing in such county, and the owner of some shares of stock and bonds issued by American corporations. The executor collected the debt, and received the shares and bonds. The will gave all the estate to the testatrix's daughter, and on such gift the collector of internal revenue of the district embracing Kings county laid and collected a tax under the war revenue act of 1898. This action is to recover the sum paid under protest, and the present questions arise upon demurrer that the complaint does not state a cause of action. The plaintiff alleges that the gift was not subject to the tax because it was made by a woman, who was a resident of, and domiciled in, France, to her daughter, who was a resident of, and domiciled in, Germany. The complaint does not indicate whether the testatrix or her daughter ever resided within the United States. However, from statements made upon the argument and in the briefs submitted, if not from the allegations of the complaint, the court may interpret the complaint as declaring that the testatrix, formerly an American citizen, married a French citizen, that thereafter her residence was abroad, and that for several years immediately preceding her death it had been in France. By the several statutes of America, France, and Great Britain, the marriage of a citizen of such country with an alien wife confers upon the latter the citizenship of the husband; and this policy of three great powers, in connection with section 1999 of the Revised Statutes, which proclaims that expatriation is an inherent right, establishes that the political status of the wife follows that of her husband, with the modification that there must be withdrawal from

her native country, or equivalent act expressive of her election to renounce her former citizenship as a consequence of her marriage. Some serious objections to this, or even the opposite conclusion, exist, but it has been reached after due consideration of the subject, and pertinent authorities, including Shanks v. Dupont, 3 Pet. 242, 7 L. Ed. 666; Pequignot v. City of Detroit (C. C.) 16 Fed. 211; and Comitis v. Parkerson (C. C.) 56 Fed. 556. Hence the testatrix must be regarded as having been a nonresident alien at the time of her death. For the same reason the daughter of the deceased, and her legatee, who had intermarried with a citizen of Germany, and for eight years previous to her mother's death had resided there, should be regarded as a citizen of that country.

Hence the discussion will be undertaken at the outstart upon the assumption that the gift was by a nonresident alien to a nonresident alien. It is undoubtedly true that neither a state legislature nor congress may lay an inheritance tax unless it has the jurisdiction of the donor or donee or the property donated. In the present case there is no dominion over the donor or the legatee. Hence there can be no proper tax unless there is a relation to the property justifying it. It will be assumed for the moment that the property was within the state of New York. In such case the state of New York could lay a direct tax upon it, which would be a usual exercise of the power of taxation. But the inheritance tax laid by the state is not based upon the theory of direct taxation of the property. It has been deemed a tax on the transmission of the property, based upon the right of the state to regulate the disposition of the same upon the owner's death. While the United States has no such power of regulation, yet it may lay a tax similar to that here involved upon property of a nonresident which was in the state at the time of his death. This follows from the statement of principles in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969.

The next inquiry, then, is, was the property within the state of New York? The property consisted of a certificate of stock issued by a new York corporation, bonds and coupons of corporations within one of the states, and an account current against citizens of New York. An account owing by a resident of the United States to a resident citizen of France does not and cannot have a situs in the state of New York, but its situs is that of its owner. There is no property here. What there is of property is abroad. The complaint states that the property taxed was in the state of New York at the decedent's death. This could not be true of a simple indebtedness to an alien, actually resident abroad at the time of his death. Such property is incapable of a situs apart from its owner, and is in this regard unlike public bonds and circulating notes of banking institutions (In re State Tax on Foreign-Held Bonds, 82 U. S. 300, 324, 21 L. Ed. 179); or bonds of private corporations (In re Whiting's Estate, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232); or certificates of stock (In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238; Tappan v. Bank, 86 U. S. 490, 22 L. Ed. 189); or tangible property, such as goods and chattels

(Pullman Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; W. U. Tel. Co. v. Attorney General, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 669; Marye v. Railroad Co., 127 U. S. 117, 8 Sup. Ct. 1037, 32 L. Ed. 94; Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715). But it may be asked, if a simple indebtedness can have no separate situs, how can a different conclusion be reached if the obligation be embodied in a writing, which is only evidence of a debt? Kirtland v. Hotchkiss, 100 U. S. 491, 498, 25 L. Ed. 558.

In Re State Tax on Foreign-Held Bonds, 82 U. S. 300, 21 L. Ed. 179, Mr. Justice Field said:

"But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors. and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. * * * It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the state in which it may be taxed. The same thing is true of public securities consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions. The former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner. The latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners."

The learned judge also illustrates by authorities, of which People v. Eastman, 25 Cal. 603, is a type, that a mortgage has no existence independent of the thing secured by it; that a payment of a debt discharges the mortgage; that the thing secured is intangible, and has no situs distinct and apart from the residence of the holder, but pertains to and follows the person. It may be observed that in the case then before the court the bonds were beyond the territorial jurisdiction of the taxing power.

The court of appeals of New York has determined that, when the owner is a nonresident, bonds of domestic corporations are taxable under the New York transfer act, if they are in fact in the state for safe-keeping, but not when they are actually without the state; and that the stock of such corporations is taxable in New York, irrespective of the actual situs of the certificate, and that deposits with a domestic trust company are taxable, although technically the property of the nonresident is a mere indebtedness from the trust company. See In re Bronson, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238; In re Whiting's Estate, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232; In re Morgan's Estate, 150 N. Y. 35, 44 N. E. 1126; In re Houdayer, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235. Obviously the legislature in this instance left none of its taxing power unexercised, and expressed a policy to exact duties from such nonresidents as should lend their credit to the local enterprises of the state, provided the

evidences of debt be within the state. The decision interpreting this act stops short of holding that an account current, due from a resident of New York to a resident of France, could be the subject of a death duty to the state government, although the holding respecting deposits with trust companies may be differentiated with difficulty. Yet, as is Beers v. Shannon, 73 N. Y. 292, it is high authority for holding that if the statute fairly include bonds of private corporations, having an actual situs within the state, although the owner be an actual nonresident, they would be subject to a death duty. That bonds of corporations may, for the purposes of taxation, have a situs separate from that of the owner, probably accords with judicial expression; but it is considered that there would be a presumption against the intention of the taxing power to give such property a separate situs. What theory underlies statutes imposing death duties? "It is the power to transmit or the transmission or receipt of property by death, which is the subject levied upon by all death duties." Knowlton v. Moore, 178 U. S. 41, 57, 20 Sup. Ct. 753, 44 L. Ed. 969. This power of transmission is wholly created by law (Magoun v. Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037), with the result that the right of a person to dispose of his property by will is within legislative control (U. S. v. Perkins, 163 U. S. 625, 627, 16 Sup. Ct. 1073, 41 L. Ed. 287). In several instances (Magoun v. Bank, 170 U. S. 289, 18 Sup. Ct. 594, 42 L. Ed. 1037; Plummer v. Coler, 178 U. S. 126, 20 Sup. Ct. 829, 44 L. Ed. 998) the supreme court has quoted with apparent approval the statement of Judge Taney in Mager v. Grima, 8 How. 490, 493, 12 L. Ed. 1168, that a state may refuse to allow an alien, either as heir or legatee, to take personal property within its limits, and may direct that such property shall belong to the state. And in Plummer v. Coler, supra, the statement in the opinion in State v. Dalrymple, 70 Md. 294, 17 Atl. 82, 3 L. R. A. 372, is quoted, which is to the effect that the legislature has discretion to determine what limitations shall be imposed on the power of disposition by will. Now, the theory of a death tax is that it is a limitation upon the power of disposition. Would a statute based upon such theory presumptively include the personal property of a nonresident alien, present in the country of the taxing power, without apt words necessarily indicating such inclusion? It was said in Wallace v. Attorney General, L. R. 1 Ch. App. 1, respecting the taxation of the personal property of nonresidents under St. 16 & 17 Vict. c. 51: "Parliament has, no doubt, the power of taxing personal property in this country; but I can hardly think that we ought to presume such an intention, unless it is clearly stated." The opposite presumption is reasonable. The property, by a rule of the widest adoption and long establishment, is regarded as not separated from the situs of the owner, and some fitting expression of legislative intention to sever it and give it an independent situs for the purposes of taxation must be contained in the statute imposing the tax. Statutes should not be presumed to obliterate long-established laws respecting rights of property and the place of its taxation; and when the legislature would have jurisdiction neither of the donor or donee, nor in legal theory of the property, a statute imposing special taxes

should be presumed primarily to apply only to persons and property having a recognized legal situs within the territorial jurisdiction of the taxing power. State v. Ross, 23 N. J. Law, 517, 522. The transmission of property which is the subject of the tax, in the present instance, is governed by the law of the domicile, and not by the law of the actual situs, and the presumption would be that the taxing power did not intend to lay an inheritance tax on property transmitted, without its intervention, from a person to a person absolutely beyond its jurisdiction. Especially should it be presumed that a state did not intend to apply to nonresidents the theory upon which inheritance taxes are based, since the doctrine finds no practical expression in the actual policy of modern states. Notes, bills, and bonds at the death of the owners, under great diversity of circumstances, are found in foreign jurisdictions; but an attempt by a foreign power to appoint beneficiaries for such property, or permanently to appropriate the same, "would justly incur the rebuke of the intelligent sentiment of the civilized world." State v. Ross, 23 N. J. Law, 517, 521. Hence it is not to be presumed that a state has, even to a limited degree, put in force this theory, unless the words of the statute clearly indicate it. But the present statute is fashioned according to all the legal rules and observances of nations, to which attention has been called, and expressly excludes the property of nonresident aliens.

Section 29 of the act of 1898, now under consideration, provides:

"That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, * * * passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the United States, as follows; that is to say," etc.   30 Stat. 464.

It is undoubted that the statute did not intend to subject to the tax the property when transmitted by will, unless in the absence of such will it would be distributable under "the intestate laws of any state or territory." The present property, in the absence of the will, would not have been distributed according to the intestate laws of the state of New York, but pursuant to the statute of distribution of the country where the deceased resided. Hence not only is there present the presumption that there was no intention to tax the intangible personal property of a nonresident alien, but a declaration, in simple words, that only such property may be taxed under the act as would pass under the intestate laws of the state, which necessarily excludes all personal property that would not so pass. It is not jurisdiction over the fund for the purposes of administration that determines its taxable quality, but the statute embodies the theory that usually underlies all inheritance taxes, viz. transmission of title by virtue of the law of a state or territory within the jurisdiction of the taxing power. Has the state undertaken to appoint persons to whom such property shall be dis-

tributed upon the death of the first owner? The attorney for the United States, in referring to the similar argument by the plaintiff, states that "he entirely overlooks the fact that the law of France has, and can have, no operation or effect whatever in the state of New York, except by such state's authority and permission; that is, by such state's law. And this is also the same error that pervades the court's opinion in the Hunnewell Case"; and that such authority and permission of the state are to be found in Code Civ. Proc. §§ 2694, 2701. This last section, after stating the recognized law for the devise and descent of real property, continues:

"Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country of which the decedent was a resident at the time of his death."

Section 2701 provides that the court having—

"Jurisdiction of an action to procure an accounting, or a judgment construing the will, may, in a proper case, by its judgment or decree, direct a person, to whom ancillary letters are issued as prescribed in this article, to pay, out of the money or the avails of the property, received by him under the ancillary letters, and with which he is chargeable upon his accounting, the debts of the decedent, due to creditors residing within the state; or, if the amount of all the decedent's debts, here and elsewhere, exceeds the amount of all the decedent's personal property, applicable thereto, to pay such a sum to each creditor, residing within the state, as equals that creditor's share of all the distributable assets, or to distribute the same among legatees or next of kin, or otherwise dispose of the same, as justice requires."

The defendant urges that the last section shows—

"The state's purpose to retain control of the nonresident decedent's property, giving the surrogate's court, or any other court of the state which has jurisdiction of the action, full power to administer the estate of the decedent here, not only as it affects the rights of the state under the transfer tax act and otherwise, but also as between the parties interested, including resident creditors of the deceased, and his legatees or next of kin themselves; and that section 2694 regulates the succession to the property of deceased nonresidents, and provides a definite rule for the settlement of their estates. As to real property, it declares that the validity and effect of a testamentary disposition of real property, or the course of its descent, where it is not disposed of by will, shall be regulated by the laws of the state, without regard to the residence of the decedent. However, with regard to personal property (which is included in the term 'other property'), it provides that the validity and effect of a testamentary disposition by a nonresident of personal property situated within the state, or its distribution where not disposed of by will, shall be regulated by the laws of the state or country of which the decedent was a resident at the time of his death, except where otherwise prescribed by the law of this state. The purpose of the legislature is apparent in adopting this section. It is intended to regulate the succession to the property of deceased nonresidents, and provide a rule by which our courts could administer the property of such nonresident decedents, located in this state, and to retain control of the same. It makes the law of the testator's residence or domicile the law of this state, for the purpose of administering the nonresident decedent's property; and a legacy, etc., of nonresident's property, situated within this state, thus passes 'either by will or the intestate laws' of that state, as the case may be; for otherwise the laws of such other state or such foreign country could have no operation or effect within this state."

The answer to this is clear. The title to the estate transmitted springs from the foreign, not the domestic, law. The statute in this regard is declaratory.

In Ennis v. Smith, 14 How. 424, 14 L. Ed. 483, it is said by Mr. Justice Wayne:

"For several hundred years upon the Continent, and in England, from reported cases, for a hundred years, the rule has been that personal property, in cases of intestacy, is to be distributed by the law of the domicile of the intestate at the time of his death. It has been universal for so long a time that it may now be said to be a part of the jus gentium. Lord Thurlow speaks of it as such in the house of lords, in the case of Bruce v. Bruce [2 Bos. & P. 229, note]. Erskine, in his Institutes of the Law of Scotland (book 3, p. 644, tit. 9, § 4), says this rule is founded on the laws of nations."

Mr. Justice Wayne calls attention to one of the reasons for the rule given by Lord Hardwicke, in these words, so pertinent to the present controversy:

"A contrary rule would be extremely mischievous, and would affect our commerce. No foreigner could deal in our funds but at the peril of his effects going according to our laws, and not those of his own country."

In Dammert v. Osborn, 141 N. Y. 564, 567, 35 N. E. 1088, 1089, it is said:

"The fundamental error that pervades all the reasoning of the learned counsel on this subject is to be found in the assumption that the courts of this state can annul a disposition of personal property in a foreign will, valid by the law of the domicile, and distribute the property to claimants here, contrary to the terms of such disposition, as interpreted by the law under which it was made. No controlling authority can be found in support of such a proposition."

In Cross v. Trust Co., 131 N. Y. 330. 339, 30 N. E. 125, 127, 15 L. R. A. 606, 608, Judge O'Brien states:

"It is a general and universal rule that personal property has no locality. It is subject to the law of the owner's domicile as well in respect to a disposition of it by act inter vivos as to its transmission by last will and testament and by succession upon the owner dying intestate. This is, in substance, the language in which Judge Denio stated the law in this court, and which he concisely and clearly extracted from the authorities cited by him. Parsons v. Lyman, 20 N. Y. 112. The learned judge added that 'the principle, no doubt, has its foundation in international comity, but it is equally obligatory, as a rule of decision on the courts, as any legal rule of purely domestic origin. It does not belong to the judges to recognize or to deny the rights which individuals may claim under it at their pleasure or caprice; but, it having obtained the force of law by user and acquiescence, it belongs only to the political government of the state to change it whenever a change becomes desirable.' * * * Should our legislature deem it for the public good to repeal the statute relating to wills, and to provide that all property should, upon the death of the owner, pass under the laws of intestacy, a disposition by will of personal property, actually within the territory of the state, but owned by a person domiciled in another state, would still be valid, providing it was valid by the law which governed the owner."

These quotations are not made because the rule stated by them is in doubt, but for the purpose of meeting the suggestion of the defendant that the Code of Civil Procedure is the primary source of the power to transmit or of the power to receive. Such statute is merely declaratory of the law. It is not the source of title, but simply points out in general terms where the courts shall look for the law which governs the transmission of the title.

Lastly, the authority for the construction adopted is ample. The war revenue act of 1898, so far as it imposes a legacy tax, as appears in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L.

Ed. 969, is a reproduction of the act of 1864, which last act, as regards duties on legacies, substantially adopts the English system. Under the act of 1864 it was decided by the United States circuit court, district of Massachusetts (Gray and Lowell, JJ.), in U. S. v. Hunnewell (C. C.) 13 Fed. 617, that the legacy duty imposed thereby is made payable on the estates of those persons only whose domicile at the time of their death is in the United States, and that it is not payable when the person possessed of such property dies intestate; so it would not be payable if such person die intestate, and if an heir takes a distributive share by the intestate laws of the place of domicile of the ancestor at the time of the latter's death. The facts involved in that case show that the action was to recover a tax on a legacy alleged to be due upon American securities, given by the will of a woman who at the time of her death was a citizen and resident of France, to her son, then and thereafter a resident of France. The will was executed in conformity with the law of France, was proved there, and a copy thereof was filed in the probate office of the county of Suffolk, state of Massachusetts, and the defendant, a citizen of such state, was appointed by the probate court of that county executor. The Hunnewell Case was followed in U. S. v. Morris (D. C.) 27 Fed. 341. See, also, upon this general subject, Orcutt's Appeal, 97 Pa. St. 179; In re Enston's Will, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464. The English act was similarly interpreted in Thomson v. Advocate General, 12 Clark & F. 1, 13 Simon, Ch. R. 153 (house of lords 1845). See, also, Wallace v. Attorney General, L. R. 1 Ch. App. 1. The opinion of Judge Gray in the Hunnewell Case is obviously a correct exposition of the law. It results from the foregoing views that the demurrer should be overruled.