## In re MARTORANA.

(District Court, E. D. Pennsylvania. March 26, 1908.)

### No. 585.

1. ALIENS—NATURALIZATION — PETITION — VOUCHING WITNESSES — HUSBAND AND WIFE—COMPETENCY.

Under the express terms of Act Cong. March 2, 1907, c. 2534, § 3, 34 Stat. 1228, c. 2534 [U. S. Comp. St. Supp. 1907, p. 381], respecting the expatriation of citizens, an American woman became an alien by marrying an alien, though she continued to reside in the United States, and hence was incompetent to act as a witness in support of his petition for naturalization, since Act June 29, 1906, c. 3592, § 4, 34 Stat. 596 [U. S. Comp. St. Supp. 1907, p. 420], relating to naturalization, expressly requires such vouchers to be citizens.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 299–301; vol. 8, p. 7571.]

2. SAME—SUBSTITUTE WITNESSES—RIGHT TO CALL.

Act June 29, 1906, c. 3592, § 4, 34 Stat. 596 [U. S. Comp. St. Supp. 1907, p. 420], relating to naturalization, provides that aliens may be naturalized only in accordance with such act; and subdivision 2, par. 3, of such section requires a petition for naturalization to be verified by at least two citizens, who must state that they have known applicant to be a resident of the United States for at least five years, etc. Section 6 (34 Stat. 598 [U. S. Comp. St. Supp. 1907, p. 423]) forbids final hearing until the petition with the names of the vouchers has been filed and notice thereof has been posted at least 90 days. Section 5 provides that if applicant's witnesses, who have been posted as those whom he expected to summon, fail to appear at the final hearing, other witnesses may be summoned. Held, that substitute witnesses may only be called and the final hearing proceeded with when all the preliminary provisions of the act have been strictly observed; and hence, where one of an applicant's vouchers was incompetent, because an alien, applicant could not call a qualified substitute at the hearing.

3. SAME—AMENDMENT OF PETITION.

But, it appearing that there was an honest mistake as to the competency of the disqualified witness, the petition may be amended by allowing applicant to have the petition verified by one who is qualified and have it reposted as required by section 6 (Act June 29, 1906, c. 3592, 34 Stat. 598 [U. S. Comp. St. Supp. 1907, p. 423]), after which the petition can be finally heard.

On Petition for Naturalization.

William S. Gregg, Sp. Asst. U. S. Atty.

HOLLAND, District Judge. At the time of filing his petition for naturalization, viz., September 20, 1907, Martorana produced as one of the witnesses in his behalf Lorella S. Martorana, his wife. It developed at the hearing on January 13, 1908, that Mrs. Martorana was born in the United States and resided here all her life, and that she was mar-

ried to petitioner on May 7, 1907. The government contends she thereby became an alien, and was incompetent to be a voucher for her husband on September 20th, when the petition was filed; that no substitution, under the circumstances, can be allowed at the hearing; that the petition cannot be amended, but that it should be dismissed.

A review of the decisions of the courts, the opinions of the Attorneys General, the State Department, and of the International Claim Commissions, to which the United States has been a party, shows that the authorities were not entirely uniform; but the decided weight was to the effect that a marriage of an American woman to an alien conferred upon her the nationality of her husband. Annie Comitis v. W. S. Parkerson et al., 22 L. R. A. 148, where all the authorities are collected in a note; s. c. 56 Fed. 556. See, also, cases of Jenns v. Landes (C. C.) 85 Fed. 801, and Ruckgaber v. Moore (C. C.) 104 Fed. 947. To resolve any doubt that might exist because of the variant decisions of the courts and departments as to the effect of such a marriage, the citizenship committee of 1906 recommended, and Congress passed, Act March 2, 1907, c. 2534, 34 Stat. 1228 [U. S. Comp. St. Supp. 1907, p. 381], entitled "An act in reference to the expatriation of citizens and their protection abroad," section 3 of which act provides:

"That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein."

This law serves to settle definitely the citizenship of married women in this country, and to settle it in accord with the adjustment of the same question by statute in most civilized countries. Whatever her status would have been, under the same circumstances, before the passage of this act, it is clear Mrs. Martorana was when she became a voucher, and is now, an alien, as the act provides an "American woman who marries a foreigner shall take the nationality of her husband"; and as it appears from the terms of the act that this change shall be effected by such marriage, without regard to domicile, it is obvious Mrs. Martorana, by her marriage to Santi Martorana on May 7, 1907, became an alien, and took the nationality of her husband, who was a subject of the King of Italy, and was incompetent to act as a witness in support of her husband's petition for naturalization, as the act of June 29, 1906, requires the vouchers to the petition to be "citizens of the United States." The facts as to her alienage appeared at the hearing. There was evidently no intention to deceive, nor was there any carelessness on the part of the applicant in securing witnesses supposed by him to be competent. There was an honest mistake as to her citizenship after the marriage. The petitioner offered a competent substitute at the hearing; but this was objected to by the United States attorney, and a motion made to dismiss the petition. The questions, then, to be determined, are (1) whether, under the circumstances, the petitioner should have been allowed to call a qualified substitute at the hearing; and, (2) if not, what disposition should be made of the petition?

Act June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp.

1907, p. 419], entitled "An act to establish a Bureau of Immigration and Naturalization to provide a uniform rule of naturalization of aliens throughout the United States," has provided a somewhat elaborate code of procedure for the naturalization of aliens, and it is declared (section 4) that aliens may be admitted to become citizens as therein required, and "not otherwise." The parts of the act material to the determination of the questions above stated are as follows: Paragraph 3 of the second subdivision of section 4 provides:

"The petition shall also be verified by the affidavits of at least two credible witnesses, who are citizens of the United States, and who shall state in their affidavits that they have personally known the applicant to be a resident of the United States for a period of at least five years continuously, and of the state, territory, or district in which the application is made for a period of at least one year immediately preceding the date of the filing of his petition, and that they each have personal knowledge that the petitioner is a person of good moral character, and that he is in every way qualified, in their opinion, to be admitted a citizen of the United States."

The fourth subdivision of section 4 provides:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record."

Section 5 provides:

"That the clerk of the court shall, immediately after filing the petition, give notice by posting in a public and conspicuous place in his office, or in the building in which his office is situated, under an appropriate heading, the name, nativity, and residence of the alien, the date and place of his arrival in the United States, and the date, as nearly as may be, for the final hearing of his petition, and the names of the witnesses whom the applicant expects to summon in his behalf; and the clerk shall, if the applicant requests it, issue a subpœna for the witnesses so named by the said applicant to appear upon the day set for the final hearing, but in case such witnesses cannot be produced upon the final hearing other witnesses may be summoned."

Section 6, in part, provides:

"That petitions for naturalization may be made and filed during term time or vacation of the court and shall be docketed the same day as filed, but final action thereon shall be had only on stated days, to be fixed by rule of the court, and in no case shall final action be had upon a petition until at least ninety days have elapsed after filing and posting the notice of such petition."

These portions of the act indicate what proofs are necessary, in addition to the statement made by the applicant, and they also indicate who are competent to furnish these proofs, and the time and manner of its introduction. There was nothing in the summary and indifferent method of naturalizing aliens under the old law to prevent fraud. The court depended entirely upon the truthfulness of the applicant and his

witnesses, and experience has amply demonstrated that while, as a rule, their statements and representations could be relied upon, yet thousands of fraudulent certificates were obtained, because there were no means provided to verify the statements made and no danger of detection. If, for any reason, an alien became anxious for citizenship, he could easily secure a certificate by making application, whether qualified or not, so long as his conscience and that of his witnesses were sufficiently elastic to make the necessary representations. It was no one's business to inquire as to the right of the applicant to be naturalized, and in fact there was no possible opportunity afforded under the law for such an investigation. No one was apprised of the intention of the alien to apply for citizenship until he appeared in court with his witnesses, neither of whom, as a rule, was known to the court or any of the officers. Their statement as to the right of the applicant to be naturalized was accepted as true, with absolutely no inquiry, either before or after the final hearing. Under these circumstances, there could be but one result: Frauds increased as citizenship became more desirable.

That this might be prevented the act of 1906 was passed, the dominant feature of which is publicity. The applicant can no longer come into court without notice and swear to statements, whether true or not, and secure his papers without danger of detection. The code of procedure pointed out by the act must be strictly followed to entitle him to a hearing. The statements required in his declaration of intentions and in his petition for naturalization, and the form of the same, are specifically provided for in the act, as well as the qualification of the vouchers, and the statements required to be made by them, and the form of their affidavit. It is necessary that the petition be verified by the affidavit of at least two witnesses (1) who are citizens of the United States; (2) who shall state that they have personally known the applicant to be a resident of the United States for a period of at least five years continuously; (3) and of the state, territory, or district in which the application is made for a period of at least one year immediately preceding the date of the filing of his petition; (4) and each must have personal knowledge that the person is of good moral character. The sixth section forbids final hearing until after the petition, with the names of the vouchers, has been filed for at least 90 days. This affords the authorized officials time for investigation and enables inquiry to be made of competent witnesses who are citizens and know of their personal knowledge the facts to be established by the applicant; and, as a further precaution, it is required that the witnesses whom the applicant expects to summon in his behalf at the final hearing of his petition, together with other information, shall be posted at a conspicuous place in the clerk's office. This further affords an opportunity of investigation, insuring the naturalization of those only who are qualified under the law. When all these preliminary requirements are strictly complied with, and the applicant appears upon the day set for final hearing, and his witnesses, who have been posted as those whom he expected to summon, fail to appear, he is permitted to call in others for the purpose of testifying before the court, as provided by subdivision 4 of section 4. But substitutes can only be called and the fi-

nal hearing proceeded with when all the provisions of the act have been strictly observed as to the qualification of the vouchers and notice to be given. In these particulars the act is mandatory, and no final hearing can be had (except as provided in section 10) until the applicant has been vouched for by witnesses who are citizens and possessed of certain knowledge concerning the applicant which will enable the official charged with the work of investigation to obtain reliable information as to the applicant's right to be naturalized. If it should appear that both or either of the vouchers are not strictly qualified as required by the act, the opportunity for prior inquiry, contemplated by the act, has not been afforded. It is no answer to say that inquiry is not made in every case, or that, in the case of Mrs. Martorana, her disqualification is technical. The knowledge that reliable sources of information exist and inquiry may be made has the desired effect to prevent frauds, and as to the citizenship of the voucher there is no middle ground, the act expressly requiring "two credible witnesses who are citizens," etc.; and there is no exception in favor of one who, as in this case, is undoubtedly qualified to give reliable information as to the qualification of the applicant, yet is technically disqualified by the fact of her marriage.

Section 6 requires the petition, supported by competent vouchers, to be on file 90 days, and the fifth section requires that the clerk give notice of the filing the same by posting, stating, among other information, the "names of the witnesses whom the applicant expects to summon" at the final hearing, and this section provides that "in case such witnesses cannot be produced upon the final hearing, other witnesses may be summoned," but these substitutions can only be summoned after all the preliminary requirements have been observed, and the final hearing can lawfully be had. Where, as in this case, an honest mistake has been made, there is no reason why the petition should not be amended by allowing the applicant to have his petition sworn to by one who is qualified, and have it reposted, as required by section 6, after which he can be finally heard.

The motion to dismiss the petition is overruled, and the applicant allowed to amend, and have same reposted, as required by law.